MIDWEST CARBIDE CORPORATION,
Appellant,

v.

OCCUPATIONAL SAFETY AND
HEALTH REVIEW COMMISSION;
and Commissioner of Labor, Allen J.
Meier, Appellees.

No. 83–832.

Supreme Court of Iowa.

July 18, 1984.

Rehearing Denied Aug. 16, 1984.

Ivan T. Webber of Norman, Webber & Marion, Keokuk, for appellant.

Thomas J. Miller, Atty. Gen., and Thomas D. McGrane, Asst. Atty. Gen., for appellees.

Considered by HARRIS, P.J., and McCORMICK, McGIVERIN, LARSON and CARTER, JJ.

McGIVERIN, Justice.

Petitioner employer, Midwest Carbide Corporation, appeals from the district court's affirmance on judicial review of the respondent Iowa Occupational Safety and Health Review Commission's decision that Midwest had committed a serious violation of Iowa Code section 88.4 (1979) and assessment of a civil penalty of $500. Iowa Code § 88.14(2). We affirm.

Midwest operates a plant in Keokuk which produces carbide by means of an electric submerged arc furnace. While operating, such furnaces are normally subject to periodic "eruptions," which at times can be very severe. On October 3, 1979, there were a number of severe eruptions. At 4:20 a.m. on October 4, there was a powerful explosion within Midwest's furnace which caused several serious injuries to Midwest's employees and extensive property damage.

After an inspection, a compliance officer from the office of the Iowa Commission of Labor issued a citation to Midwest, section 88.7, for the alleged violation of the "general duty clause" of Iowa Code section 88.4 which provides:

> Each employer shall furnish to each of his employees employment and a place of employment which is free from *recognized hazards* that are causing or likely to cause death or serious physical harm to his employees and comply with occupational safety and health standards promulgated under this chapter.

(Emphasis added.) The Commissioner proposed a civil penalty of $10,000 for the alleged violation. Iowa Code § 88.14(1).

Midwest contested the citation under section 88.8(3). The Commissioner then filed a complaint, in accordance with 610 Iowa Admin.Code § 1.33(1), before the Review Commission formalizing the citation for contested case purposes, claiming a "willful serious violation" of section 88.4. Midwest filed an answer denying the allegations. 610 Iowa Admin.Code § 1.33(2). An employees union intervened on the behalf of the Commissioner. 610 Iowa Admin.Code § 1.21.

An evidentiary hearing was held before a hearing officer. His proposed decision, 610 Admin.Code § 1.90(2), found that the Commissioner of Labor had failed to prove a "willful violation" and vacated the proposed penalty.

The Commissioner and the intervenor employees union appealed to the Review Commission. 610 Iowa Admin.Code § 1.90(2)–(3). After oral arguments by the parties and consideration of the record made before the hearing officer, the Review Commission found that a "serious violation" of section 88.4 had occurred and

assessed Midwest with a civil penalty of $500.

Midwest filed a petition for judicial review in district court. Iowa Code §§ 17A.19 and 88.9(1). The court ruled that Midwest knew of past severe "eruptions" and the hazard they posed; and, that even if an "explosion" had not previously occurred, there was substantial evidence that the workplace contained a "recognized hazard," *see* section 88.4, sufficient to support the agency action. The court also rejected other claims made by Midwest in affirming the agency decision.

Midwest appeals and contends: 1) the Review Commission imposed a civil penalty on Midwest upon a basis neither alleged nor proven by the Commissioner of Labor; 2) the decision of the Review Commission was not supported by substantial evidence; 3) it was deprived of a fair hearing before the Commission's hearing officer because of various procedural rulings; and, 4) the Review Commission violated Iowa Code ch. 17A by not promulgating rules to implement the "general duty clause" of section 88.4.

The intervenor employees union has not participated in the district court proceeding or in this appeal.

I. *Notice of the charge.* Midwest contends the basis upon which the Commission's final decision and penalty rests was neither alleged nor proven by the Commissioner of Labor. Midwest argues that since it was initially charged with a "willful violation," Iowa Code section 88.14(1), of the "general duty" clause of section 88.4, but was ultimately found culpable of a "serious violation," Iowa Code section 88.-14(2), of that clause, it was denied effective notice of the charge.

The notice required in an administrative agency contested case adjudication is found in Iowa Code section 17A.12(2) which provides that:

The notice shall include:

**1.** Iowa Code section 88.14 penalties:
  1. *Willful violations.* Any employer who willfully or repeatedly violates the requirements of section 88.4, any standard, rule, or order

*a.* A statement of the time, place and nature of the hearing.

*b.* A statement of the legal authority and jurisdiction under which the hearing is to be held.

*c.* A reference to the particular sections of the statutes and rules involved.

*d.* A short and plain statement of the matters asserted....

*Cf. Kohorst v. Iowa State Commerce Commission*, 348 N.W.2d 619, (Iowa 1984) (notice pleading is not applicable to an appellate review proceeding under chapter 17A since the pleading requirements of section 17A.19(4) are much more stringent than those required in an original action under Iowa R.Civ.P. 69).

More specifically, in regard to the sufficiency of the pleadings set forth in the Commissioner's complaint, 610 Iowa Admin.Code § 1.33(1)(b) provides:

The complaint shall set forth all *alleged violations and proposed penalties* which are contested, stating with particularity:

(1) The basis for jurisdiction;

(2) The time, location, place, and circumstances of each alleged violation; and

(3) The considerations upon which the period for abatement and the proposed penalty on each such alleged violation is based.

(Emphasis added.)

█ Midwest's argument essentially challenges the complaint on grounds that it did not include a "reference to the particular sections of the statutes and rules involved," Iowa Code § 17A.12(2)(c); and that it did not "set forth all alleged violations and proposed penalties," 610 Iowa Admin.Code § 1.33(1)(b).

The Commissioner's complaint alleged that the citation was for a *"willful serious* violation of section 88.4, Code of Iowa (1979)."[1] (Emphasis added.) The com-

promulgated pursuant to section 88.5, or regulations prescribed pursuant to this chapter, may be assessed a civil penalty of not more than ten thousand dollars for each violation.

plaint then noted that the "violation is a willful violation in accordance with section 88.14(1), Code of Iowa (1979)."

We conclude this pleading provided sufficient notice to Midwest of the "particular sections of the statutes and rules involved" as well as the "alleged violations and proposed penalties" in the ultimate finding that it had committed a "serious violation," section 88.14(2), of section 88.4. The basis for the penalty, a violation of the "general duty clause" found in section 88.4, was clearly listed in the complaint. The fact that the citation to the "serious violation" penalty was not included in the complaint does not make the notice defective in this case for two reasons. The first is the fact that the complaint stated that the citation was for a "willful *serious* violation of section 88.4." (Emphasis added.) Second, the reference to section 88.14(1), concerning a "willful violation," must also be deemed to put Midwest on notice of section 88.14(10) which states that:

> The commission shall have the *authority to assess all civil penalties provided in this section*, giving due consideration to the appropriateness of the penalty with respect to the size of the business of the employer being charged, the gravity of the violation, the good faith of the employer, and the history of previous violations.

(Emphasis added.)

We conclude that Midwest received reasonable notice of the charge and ultimate penalty imposed.

II. *Substantial evidence.* Midwest argues that the decision of the IOSHA Review Commission is not supported by substantial evidence and should be overturned. Midwest contends that the furnace explo-

sion did not amount to a "recognized hazard" based on the fact that the cause of the explosion was never discovered and because the industry had never in its history experienced an explosion of equivalent magnitude.

■ Our scope of review is dictated by Iowa Code sections 17A.20 and 17A.19(8) which require us to affirm the agency's action except when we "cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes...." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464–65, 95 L.Ed. 456, 467–68 (1951), *quoted in Brown v. PERB*, 345 N.W.2d 88, 93 (Iowa 1984) and *Mount Pleasant Community School District v. PERB*, 343 N.W.2d 472, 477 (Iowa 1984).

Iowa Code section 88.4 is identical to 29 U.S.C. section 654(a)(1), the federal OSHA equivalent. We have said that "IOSHA should be interpreted similarly to OSHA under the principal federal interpretations" because such opinions "are persuasive when a state statute is patterned after a federal statute." *Koll v. Manatt's Transportation Co.*, 253 N.W.2d 265, 269–70 (Iowa 1977).

A. Several federal cases have dealt with the situation where the cause of an accident was never discovered, yet a finding of a "recognized hazard" by the agency was upheld. In *Bethlehem Steel Corp. v. Occupational Safety and Health Review Commission*, 607 F.2d 871, 874 (3rd Cir. 1979), the court said:

> Our task on review is not to look for a proximate cause relationship between the accident which preceded the inspection

---

2. *Serious. violations.* Any employer who has received a citation for a serious violation of the requirements of section 88.4, of any standard, rule, or order promulgated pursuant to section 88.5, or of any regulations prescribed pursuant to this chapter, shall be assessed a civil penalty of up to one thousand dollars for each such violation.

....

11. *Definition of serious violation.* For purposes of this section, a serious violation shall be

deemed to exist in a place of employment if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.

and the specific violation charged, but to determine whether there is substantial evidence in the record supporting the charge that the employer maintained, at the time and place alleged, a recognized hazard to the safety of its employees.

Furthermore, in *Kelly Springfield Tire Co. v. Donovan*, 729 F.2d 317, 322 n. 7 (5th Cir.1984), the court said that Kelly's emphasis on a similarly unexplained explosion was misplaced because "[p]roof of a link between the 'hazard' and a particular accident is not critical to establishing a general duty clause violation."

Thus, the Commission's failure to determine the cause of the explosion does not preclude or diminish its ability to find a "recognized hazard."

B. Neither are we persuaded by Midwest's argument that the explosion could not have been a "recognized hazard" because an explosion of a similar magnitude had never occurred in the industry.

We first note that the explosion itself was not the basis for citing Midwest with maintaining a "recognized hazard." The record shows that the facts and circumstances prevailing prior to the explosion were sufficient to support a finding by the Review Commission that a recognized hazard to the employees existed before the explosion. This was without regard to the fact an explosion later occurred. The general duty clause is violated when a recognized hazard is maintained, regardless of whether or not an injury or accident occurs. *Bethlehem Steel*, 607 F.2d at 874. *See supra* division IIA.

In addition, we find the recent case of *Kelly Springfield Tire Co. v. Donovan*, 729 F.2d 317, is persuasive in regard to this issue.

In *Kelly*, the employer was cited for a "serious violation" of the federal "general duty clause" as a result of an explosion that ripped apart a dust collection unit in its rubber tire plant. It was shown that fires in such dust collection systems were a common occurrence throughout the tire industry. Testimony from the employer's witnesses suggested that neither Kelly nor the tire industry in general recognized an explosion hazard from the operation of the dust collection system. An expert witness for the Secretary of Labor, however, testified that the way in which Kelly operated its dust collection system constituted a hazard to employees because the history of fires at the plant suggested that an explosion was a foreseeable and predictable consequence of such operation. The court held there was substantial evidence supporting the Commission's finding that the operation of the dust collection system amounted to a recognized hazard.

C. The only factual distinction between *Kelly* and the present case is that the explosion here followed a history of eruptions in the furnace as opposed to the explosion in *Kelly* which followed a history of fires in a dust collection system. We believe *Kelly* is persuasive in this case in that the history of eruptions in Midwest's furnace, including a significantly large eruption or explosion in Midwest's furnace several years ago, in addition to the eruptions which were increasing in number and severity immediately preceding the explosion, amounted to a hazard which was recognized, or in the exercise of reasonable diligence should have been recognized, Iowa Code § 88.14(11), by Midwest. *See also Titanium Metals Corp. of America v. Usery*, 579 F.2d 536 (9th Cir.1978) (court upheld Commission's finding of a recognized hazard in the accumulation of excessive amounts of titanium dust, notwithstanding employer's assertion that although it was known that titanium dust could cause fires and some small explosions it was unknown in the industry that large explosions could occur).

These increasingly severe eruptions caused considerable fear on the part of the Midwest employees and tripped automatic shut-off switches on the furnace. However, Midwest deliberately chose not to shut down the furnace and eliminate the increasing hazard to employees by cleaning out the furnace. Midwest reset the automatic shut-off switches and chose to continue operation of the furnace until its normal

shut-down day. At this juncture the Review Commission found:

> The hazard to the employees was an explosion of any nature due to the operation or maintenance of this furnace. All of the testimony supports a finding that the employer should have known of the dangers of this furnace exploding from whatever cause. It is noted that this very furnace has in fact exploded in the past.... Therefore, the employer cannot maintain that its employees suffered from no exposure to the hazard of some type of explosion, other than the eruptions described previously.

■ We note it is the burden of the Commissioner of Labor to show that "demonstrably feasible measures would materially reduce the likelihood that such injury as that which resulted from the cited hazard would have occurred." *Champlin Petroleum Co. v. OSHRC*, 593 F.2d 637, 640 (5th Cir.1979). The Review Commission noted in its decision that, when viewing the record as a whole, alternate methods of operation which would serve to provide a workplace free from recognized hazards had been shown—including the adoption and enforcement of written standard operating procedures covering safety precautions combined with on-the-job training of personnel, and enhanced physical protection for employees through the implementation of barriers and technology which would allow for the remote shut down and operation of the furnace. It was apparent from the record that no written safety procedures and physical guards were in existence to protect employees from physical harm in the situation of the violent and menacing eruptions of the furnace that occurred on October 3.

The district court after reviewing the evidence concluded the record showed a recognized hazard existed prior to the explosion and stated:

> [T]his court believes that Midwest was fully aware of the potential of such an event [explosion] occurring based on what had happened in the past, and

based on the known characteristic of carbide furnaces generally.

We also conclude there exists substantial evidence in the record to support the finding of the Commission that Midwest committed a "serious violation" of the "general duty clause" of section 88.4.

III. *Procedural matters.* Midwest next claims it was deprived of its right to a fair and impartial hearing because the hearing officer refused to compel discovery by interrogatories and also permitted the hearing to be delayed by granting extensions and continuances.

A. Midwest complains that its interrogatories submitted to the Commissioner of Labor, requesting the identity of expert witnesses and the testimony to be given, were never answered. However, the record shows that the interrogatories in question were answered.

### SUPPLEMENTAL ANSWERS TO INTERROGATORIES

(Filed July 17, 1980)

Comes now Complainant (Commissioner of Labor) and supplements its Answers to Respondent's (Midwest) Interrogatories as follows:

*INTERROGATORY NO. 1:* Please state the name, address, employer, educational background and work experience of any person Complainant intends to call as an expert witness. *ANSWER:* J. Gerin Sylvia, Registered Professional Engineer, 219AA County Road, Lakeville, Massachusetts 02346 (with an attached resume of Mr. Sylvia's educational and work experience).

*INTERROGATORY NO. 2:* Please state the substance of the opinion which it is expected any such expert will render, including his or her conclusions and the basis and reasoning supporting said conclusions. *ANSWER:* Mr. Sylvia will testify as to the hazards associated with the operation of carbide furnaces and the potential which exists for an explosion to occur as well as the gravity and extent such explosion could produce.

The foregoing Supplemental Answers are true and accurate to the best of Complainant's knowledge and belief.

We conclude that Midwest's challenge is factually deficient and thus without merit.

B. Midwest asserts further that it was denied a fair and impartial hearing because the Commission granted the Commissioner an extension of time to file its complaint and continuances for hearing preparation.

■ The decision to grant extensions, 610 Iowa Admin.Code § 1.5, and continuances, 610 Iowa Admin.Code § 1.61, is within the discretion of the hearing officer and will not be overturned absent a clear showing of an abuse of such discretion. *See PATCO v. Federal Labor Relations Authority*, 685 F.2d 547, 588 (D.C.Cir. 1982).

■ Midwest claims no specific prejudice by such delays other than a claim that such delays "destroyed and interrupted the continuity of (its) case and made it impossible ... to present its case in an orderly fashion." We conclude this claimed prejudice is not so egregious as to show an abuse of discretion by the hearing officer in granting such extensions and continuances. The record supports a conclusion that Midwest received a fair and impartial hearing.

■ IV. *Rule and constitutional contentions.* Midwest also contends that the Commission's failure to promulgate specific rules, standards, and guidelines concerning the hazards unique to its manufacturing process, particularly the hazard cited in this case, so violated the Iowa Administrative Procedure Act, see chapter 17A, as to require reversal.

This argument, however, distorts the legal principles governing this case. Midwest is not defending itself against a baseless charge in an arbitrary action of the Review Commission. In such case it would be appropriate to argue that the action was meritless because of the agency's failure to promulgate specific rules. This is not such a case, however, because Midwest was charged with violating the general duty clause of section 88.4 which was enacted by the Iowa Legislature within the Iowa Occupational Safety and Health Act. Midwest cannot contest or sidestep a penalty for a statutory violation on grounds that the Bureau of Labor failed to promulgate a more specific rule. *Cf. Whirlpool Corp. v. OSHRC*, 645 F.2d 1096, 1097 (D.C.Cir.1981) ("general duty" clause purposely designed as a "catch-all").

The general duty clause is a rule of necessity—it would be an impossible undertaking to attempt to draft and catalog the infinite array of safety and health hazards that exist in the workplaces of various industries. Thus, the general duty clause serves as a residual safety standard below which no employer should operate.

■ Midwest's argument impliedly contends that the general duty clause is unconstitutionally vague. We reject this implicit argument, however, because the general duty clause has uniformly withstood constitutional challenge. *Ensign-Bickford Co. v. OSHRC*, 717 F.2d 1419, 1421 (D.C.Cir. 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1909, 80 L.Ed.2d 458 (1984); *Donovan v. Royal Logging Co.*, 645 F.2d 822, 831–32 (9th Cir.1981); *Bethlehem Steel Corp. v. OSHRC*, 607 F.2d 871, 875 (3rd Cir.1979).

We have considered all of Midwest's contentions and find them without merit.

We affirm the district court judgment which upheld the Review Commission's decision that Midwest had committed a serious violation of section 88.4, with resultant civil penalty assessed, in the operation of its submerged arc calcium carbide furnace.

AFFIRMED.

All justices concur except McCORMICK, J., who dissents.

McCORMICK, Justice (dissenting).

I am unable to agree with division II and the result.

No dispute exists that the "hazard" which Midwest was penalized for failing to guard against was the explosion of October 4, 1979. This explosion was not a "recognized hazard" within the meaning of Iowa

Code section 88.4 (1979) unless an explosion of that nature was foreseeable. *See Bethlehem Steel Corp. v. Occupational Safety and Health Review Commission,* 607 F.2d 871, 874 (3rd Cir.1979). At most the record in this case contains substantial evidence that a violent phenomenon of a different nature, called an eruption, might occur. The hearing officer recognized this distinction and accordingly found that no violation had been shown. In disagreeing with the hearing officer, the review commission held it was sufficient for the bureau of labor to show that Midwest should have known of the hazard of an explosion of "any nature." The effect of the commission's decision was to make Midwest responsible for recognizing the hazard of the October 4, 1979, explosion despite the absence of any evidence of foreseeability of an explosion of that nature. I do not believe a violation of section 88.4 is established in these circumstances.

As used in this record, the term "eruption" refers to the sudden release of trapped gas through the furnace burden or crust. The record shows eruptions routinely occur in submerged electric arc carbide furnaces of the kind involved here. Water leaks in the furnace cooling system increase the chances of eruptions because water contributes to furnace gases and reduces the porosity of the charge bed. One expert explained the reason for eruptions as follows:

> Submerged arc furnace, the attempt is to operate it in such a manner that the high temperature gases which are generated by the actual chemical reactions which [are] occurring essentially at the tips of the electrodes will filter up through the incoming charge and preheat the charge before it actually gets into the reaction zone underneath the electrode.

> You're only partially successful at doing this because the charge does not flow freely. It tends to pack from time to time and when this occurs the gases have to find their way out somewhere; so they form a channel, directly blow out and [very] hot, high temperature gases come

directly out of the furnace, from the reaction part of the furnace.

Eruptions are recognized hazards in submerged arc furnaces. Precautions exist to minimize them, including shutting down the furnace when they become severe. Eruptions were occurring in the furnace involved here within the twenty-four hours prior to the explosion. Routine safety measures were employed, but the furnace had not been shut-down at the time of the explosion.

Even if eruptions are characterized as a form of explosion, however, it is uncontroverted that the event of October 4, 1979, was not an eruption. Eruptions occur at the surface of the furnace charge and by their nature cannot occur elsewhere. The event here was initiated deep in the furnace crucible beneath the electrodes. Although various experts speculated about possible causes, no one tied the explosion to the eruptions or offered any testimony from which Midwest or anyone in the industry could be charged with knowing such an explosion might occur.

This is not a case where small explosions of the same nature had previously occurred and the accident simply resulted from a larger explosion. The case is therefore distinguishable from *Titanium Metals Corp. of America v. Usery,* 579 F.2d 536 (9th Cir.1978), in which smaller explosions of the same nature had previously occurred. The case is also distinguishable from *Kelly Springfield Tire Co., Inc. v. Donovan,* 729 F.2d 317 (5th Cir.1984), where expert testimony was adduced to show that an explosion was a foreseeable consequence of the company's operation of its dust collection system. No such testimony was received in the present case. Moreover, the court's reliance on *Bethlehem Steel Corp.* is misplaced. It is true a recognized hazard may exist that is unrelated to the accident which preceded the inspection. *See* 607 F.2d at 874. In this case, however, the bureau of labor asserted that the explosion which caused the accident constituted the recognized hazard. In these circumstances the possible existence

of an independent hazard, neither alleged nor proved, is not relevant.

I do not believe Midwest should be penalized for maintaining a recognized hazard in the absence of evidence that an explosion of the nature that occurred here was foreseeable. Evidence that explosions or phenomena of a different nature were foreseeable does not suffice.