OFFICE OF CONSUMER
ADVOCATE, Appellant,

v.

IOWA STATE COMMERCE
COMMISSION, Appellee,

Iowa Ratepayers Association,
Intervenor.

Iowa Power and Light Company,
Intervenor–Appellee.

IOWA POWER AND LIGHT
COMPANY, Appellee,

v.

IOWA STATE COMMERCE
COMMISSION, Appellant,

Iowa Ratepayers Association,
Intervenor,

Office of Consumer Advocate,
Intervenor–Appellant.

No. 86–1501.

Supreme Court of Iowa.

Feb. 17, 1988.
Rehearing Denied March 11, 1988.

James R. Maret, Consumer Advocate, and Gary D. Stewart and Alice J. Hyde, Des Moines, for appellant Office of Consumer Advocate.

Susan Allender, Patrick J. Nugent, and Diane Munns, Des Moines, for appellant Iowa State Commerce Com'n.

Terry C. Hancock, Sheila K. Tipton, and Robert A. Sims, of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for appellee Iowa Power & Light Co.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, CARTER and NEUMAN, JJ.

HARRIS, Justice.

This appeal is from a decision on judicial review of agency action on an application for revised electric tariffs. The district court affirmed the agency action in part and reversed in part. Both the agency and the office of consumer advocate (OCA),[1] which had challenged the action, have appealed. We affirm and remand for further proceedings.

On June 10, 1983, Iowa Power and Light Co. (Iowa Power) filed with the Iowa state commerce commission (commission)[2] a proposed substantial increase in electric rates. The proposal included recovery of costs associated with the Louisa generating station (Louisa), an electric generating plant then under construction in which Iowa Power was a partner.

Both Iowa Power and OCA filed a petition for judicial review. The district court reversed the commission in part and affirmed it in part. The district court found that the commission erred in two calculations. One had to do with Iowa Power's average investment per megawatt (MW). A second had to do with the exclusion of a debt component of the interest synchronization adjustment.

The commission and OCA filed separate appeals, each appealing from a part of the district court's decision. Iowa Power did not appeal.

■ I. A commerce commission ratemaking proceeding is subject to the Iowa administrative procedure act. *Iowa–Illinois Gas and Elec. v. Iowa State Commerce Comm'n*, 347 N.W.2d 423, 425 (Iowa 1984). Unless the evidence would compel the agency to rule in a particular way as a matter of law, the reviewing court must leave it to the agency to make the decisions vested by statute in the agency. *Johnston v. Iowa Real Estate Comm'n*, 344 N.W.2d 236, 240 (Iowa 1984). When reviewing commission decisions the district court functions in an appellate capacity to apply the standards of Iowa Code section 17A.19(8) and correct errors of law on the part of the agency. *Iowa Planners Network v. Iowa State Commerce Comm'n*, 373 N.W.2d 106, 108 (Iowa 1985).

A district court may reverse an agency decision if it is "unreasonable or characterized by abuse of discretion." Iowa Code § 17A.19(8)(g).[3] Unreasonableness is defined as "action in the face of evidence to which there is no room for difference of opinion among reasonable minds or not based on substantial evidence." *Churchill Truck Lines, Inc. v. Transportation Regulation Bd.*, 274 N.W.2d 295, 300 (Iowa 1979). The agency is free to exercise its expertise within a reasonable range of informed discretion. *Iowa–Illinois Gas & Elec. Co. v. Iowa State Commerce Comm'n*, 412 N.W.2d 600, 610 (Iowa 1987). In our review on appeal from the district court we merely apply the standards of section 17A.19(8) to the agency action to determine whether our conclusions are the same as those of the district court. *Northwestern Bell Tel. Co. v. Iowa State Commerce Comm'n*, 359 N.W.2d 491, 495 (Iowa 1984).

II. We think three contentions now raised by the OCA were rejected in *Iowa–Illinois Gas & Elec. Co. v. Iowa State Commerce Comm'n*, 412 N.W.2d 600 (Iowa 1987). OCA makes some attempt to distinguish the present facts from that case and alternatively argues it was wrongly decided. But we are convinced the precedent is controlling and are not inclined to overrule it.[4]

---

1. Now known as the consumer advocate division, department of justice.

2. Now known as the utilities board of the Iowa department of commerce.

3. All references are to the 1983 Code.

4. 1. Whether the commission's use of estimated costs of operating a new generating facility

III. The commission determined that Iowa Power had 1715 MW of generating capacity. It owns only 1329 MW of the total 1715, while the remaining 386 MW is purchased from other utilities. Of the 386 MW purchased from other utilities, 380 is purchased under the terms of a contract with the Nebraska public power district for capacity produced at its Cooper nuclear station (Cooper). The commission found that an appropriate level of generating capacity for Iowa Power would be capacity sufficient to meet peak demand plus a reserve of twenty-five percent of peak demand, or 1534 MW (1227 peak demand plus 307 MW reserve margin). Thus Iowa Power was found to possess 181 MW of excess generating capacity.

The commission then found that Iowa Power had an average investment of $333,145 per MW. It arrived at this figure by dividing Iowa Power's investment in company-owned capacity ($443,108,000) by the MW of company-owned capacity (1329). Thus the commission did not factor in the Cooper capacity in determining average investment per MW, even though it had factored in that capacity in determining whether Iowa Power had excess capacity. As a result Iowa Power's excess capacity adjustment was about $1,602,714 more than it would have been had the Cooper capacity been factored in. At Iowa Power's request the district court ordered the commission to recompute Iowa Power's average investment in generating capacity by adding 380 MW of Cooper nuclear station capacity to the 1329 MW of capacity owned by Iowa Power. OCA challenges the order both on preservation grounds and on its merits.

OCA says that Iowa Power did not raise this issue in its petition for judicial review. According to OCA this contention did not surface until Iowa Power filed its reply brief in district court, too late for consideration.

■ Iowa Code section 17A.19(4) sets a moderately strict pleading standard for preserving issues in review of agency cases. In a petition for judicial review each claimed error must be separately and distinctly stated. The standard is met when an opponent is sufficiently apprised of the alleged error so as to allow for adequate preparation and response. *Kohorst v. Iowa State Commerce Comm'n*, 348 N.W.2d 619, 621 (Iowa 1984); *Midwest Carbide v. Occupational Safety and Health Review Comm'n*, 353 N.W.2d 399, 401 (Iowa 1984).

■ Under the peculiar posture of the proceeding we think the preservation standard was met. In the first place Iowa Power could scarcely be faulted for not highlighting the argument before it did. At the outset of judicial review Iowa Power and the commission were disputing whether, in determining the excess generating capacity issue, it had been proper for the commission to include the Cooper facility as a part of Iowa Power's total generating capacity. The inclusion was challenged by Iowa Power in its initial brief. In defending the inclusion as fair the commission asserted that the Cooper capacity was also included in the calculation of average investment. Iowa Power correctly pointed out in its reply brief that the board had in fact not included the Cooper capacity in determining average investment.

in computing Iowa Power's revenue requirement violated Iowa Code section 476.33(4) and the matching principle. We held there was no violation. 412 N.W.2d at 608.

2. Whether the commission erroneously allowed a return on excess generating capacity by overstating peak demand, by overstating Iowa Power's proper reserve margin, and by undervaluing Iowa Power's investment in excess generating capacity. We held there was no error. 412 N.W.2d at 610–11.

3. Whether a straight line depreciation deduction should have been used to calculate Iowa Power's federal income tax liability. We held the commission and the district court properly deferred to a statutory interpretation of the revenue code by the internal revenue service. That interpretation, whatever its strength, was duly promulgated by the internal revenue service, is in effect, and accordingly could be recognized by Iowa Power and the commission. 412 N.W.2d at 611–12.

We do not think the interest of error preservation required Iowa Power to plead more specifically than it did. No party was surprised or misled by any lack of specificity; the question was fully developed and highly disputed, strong indication that the preservation standard explained in *Kohorst* and *Midwest Carbide* was met.

IV. We think Iowa Power is also right on the merits of the assignment. The district court concluded that, because the commission had included the Cooper capacity in determining Iowa Power's total electric generating capacity, it committed legal error when it failed to also include the Cooper capacity in determining Iowa Power's average investment per MW. The district court stated that Iowa Power would be "prejudiced by being penalized for capacity upon which Iowa Power's investors earned substantially no return." The district court accordingly remanded the proceedings to the commission in order to have the 380 MW of Cooper capacity added to the capacity figure used to calculate the average investment per MW.

On appeal the commission and OCA both attack this holding as an unwarranted substitution of judicial views for the expertise of the commission on a finding of fact. They are on firm legal ground in insisting that, in selecting the appropriate formula for deciding the excess capacity question, the commission has the authority to use its expertise, background, and experience. *See Iowa Planners Network v. Iowa State Commerce Comm'n*, 373 N.W.2d 106, 109 (Iowa 1985). So long as the commission satisfies its statutory obligation under Iowa Code section 476.8 to set "reasonable and just rates," it is not required to use any particular method to ascertain the rate base. The fixing of rates requires "a balancing of the investor and consumer interests," even if the balancing should result in no net revenues for the utility. *Iowa–Illinois Gas & Elec. v. Iowa State Commerce Comm'n*, 347 N.W.2d 423, 428 (Iowa 1984) (quoting *Federal Power Comm'n v. Hope Nat. Gas Co.*, 320 U.S. 591, 603, 64 S.Ct. 281, 288, 88 L.Ed. 333, 345 (1944)).

We agree with the district court and with Iowa Power that, if the Cooper capacity is included in calculating Iowa Power's total generating capacity, and thus also its excess capacity, it must also be included when calculating average investment. The purpose of the "return adjustment" figure is to disallow any return on that portion of Iowa Power's capacity deemed excessive. Once generating capacity is thus determined, its exclusion from the "investment per MW" figure inflates that figure (fewer MW by which to divide the investment), and thereby also inflates the return adjustment.

The district court ruled correctly in ordering the commission to include the Cooper capacity when calculating Iowa Power's average investment per MW.

V. The district court also found error in the commission's computation of the interest synchronization adjustment and ordered a recalculation. The commission does not challenge this holding on appeal but OCA does.

Funds borrowed by a utility to finance a plant under construction are not included in the utility's rate base. Hence the cost of those borrowed funds is not included in the debt component of the return on rate base. Rather, utilities capitalize this interest for ratemaking purposes in what is called the allowance for funds used during construction (AFUDC), which is added to the cost of the plant, included in rate base when the plant goes in service, and recovered through the depreciation expense included in the revenue requirement. Interest expense on funds borrowed to finance construction (the debt component of AFUDC) is deductible for income tax purposes.

A witness for OCA explained the interest synchronization this way:

The income taxes reflected in the company's test year cost of service should reflect the income tax effects of all other elements of the revenue requirement determination, including the company's operating expenses, rate base, and rate of return. Since the actual test year interest expense generally does not match either the interest component of the rec-

ommended rate of return or the pro forma rate base, it must be adjusted, that is "synchronized" with these other components of the rate determination.

The adjustment allows ratepayers to receive the benefit of tax savings for the interest expense they must pay to the utility in rates, i.e., the debt component of the return on rate base and the debt component of AFUDC. The goal in the adjustment is to compare theoretical debt costs with actual debt costs.

The district court found there was a flaw in one of the commission's adjustments, the specific line item relating to the Louisa AFUDC debt portion for the year ending 1984. In computing the interest synchronization adjustment the commission included in Iowa Power's total interest expense the debt portion of AFUDC for the Louisa generating station for the year ending October 13, 1984.

The error occurred in the computation of the actual debt costs. The Louisa plant went into operation in October 1983, so there was in fact no AFUDC for Louisa for the year ending October 13, 1984. Nevertheless in computing actual debt costs the commission included all of the Louisa AFUDC debt portion for 1982 and in addition included an item referred to as: "Year ending October 13, 1984 Louisa AFUDC—debt portion."

■ OCA defends the calculation and asks that there be considered at least a part of Louisa's 1983 AFUDC, from October 13, 1983, to December 31, 1983. But the calculation had already considered Louisa's AFUDC for all of the calendar year 1982. To add approximately three more months from 1983 to the 1982 calendar year would result in a comparison of the theoretical debt costs for one year with the actual debt costs for about fifteen months. As the district court pointed out, this flaws the comparison. It is not a question of the commission's authority to make the adjustment; the commission clearly holds that authority. Rather the question is whether the commission erred in a specific calculation. There was a fundamental mistake which must be corrected; the comparison must be made with a twelve-month period.

We emphasize our continuing commitment to the principles which prohibit judicial meddling in administrative judgment calls. Both errors here fall outside the vast area that makes up the field of the commission's exclusive expertise. We agree with the district court that, for the reasons mentioned, the case should be remanded to the commission for further proceedings in conformance with this opinion.

AFFIRMED AND REMANDED.