**In the Matter of CHICAGO, MILWAU-KEE, ST. PAUL AND PACIFIC RAIL-ROAD COMPANY, Debtor,**

**Iowa State Association of Counties, et al., Movants.**

**No. 146.**

Supreme Court of Iowa.

May 18, 1983.

Lee H. Gaudineer and Carlton G. Salmons of Austin & Gaudineer, Des Moines, for movants.

Thomas J. Miller, Atty. Gen., Lester A. Paff, Asst. Atty. Gen., and Jane E. Phillips, of the Transportation Regulation Authority, Des Moines, for the respondent State.

Considered by HARRIS, P.J., and McCORMICK, SCHULTZ, CARTER and WOLLE, JJ.

McCORMICK, Justice.

The United States District Court for the Northern District of Illinois has certified seven questions of Iowa law to us. The questions arise from competing claims in that court between certain Iowa counties and the State of Iowa to delinquent property taxes of the Chicago, Milwaukee, St. Paul and Pacific Railroad Company. We answer the certified questions.

The railroad filed a petition for reorganization under chapter VIII of the federal bankruptcy statute, 11 U.S.C. section 205 et seq., in the United States District Court for the Northern District of Illinois in 1977. The court allowed the petition and entered an order giving the railroad authority to pay taxes "now due or hereafter coming due...." The order separately enjoined the commencing or continuing of "any court or other proceeding against the Debtor, or the enforcement of any judgments against it, or ... any act or the commencement or continuation of any court proceeding to enforce any lien against its property...." Pursuant to this order, the trustee elected to defer paying property taxes owed by the railroad in Iowa that became due after December 20, 1977.

Subsequently, in 1980, the Iowa General Assembly enacted the Iowa Railway Finance Authority Act, Iowa Code chapter 307B (1981). The statute also added a provision that was codified after a minor amendment as section 307.29 in the 1981 Code:

1. Sixty days after the tax obligations of a railway company which are owed to a political subdivision of this state become delinquent as provided in section 445.37 and remain unpaid, the state department of transportation shall become

responsible for collection of the delinquent taxes. The county treasurer of each affected county shall transmit the unpaid tax statement of the railway company to the state department of transportation.

2. The transportation regulation board shall consolidate and collect all delinquent tax obligations of a railway company received from the counties. The transportation regulation board may compromise the delinquent taxes against the railway company property and by written agreement with the railway company agree to the payment of a stipulated sum in full liquidation of all delinquent taxes included in the agreement and may accept title to any right of way or other real estate in this state owned by the railway company in payment for the delinquent taxes.

3. Upon the acquisition by the department of payment from the railway company in full liquidation of the delinquent taxes including payment by means of transfer of title to rights of way or other real estate, any tax lien existing prior to such acquisition on the property on which the taxes were delinquent shall be null and void and the department shall not pay any of those delinquent taxes to the county treasurer.

This new law became effective on June 2, 1980.

Section 307.29 was amended by 1981 Acts, 2nd Ex.Sess., ch. 3, section 1, effective July 1, 1982. The amendment made the following changes in section 307.29:

1. Sixty days after the tax obligations of a railway company which are owed ~~to a political subdivision of this state~~ become delinquent as provided in section 445.37 and remain unpaid, the state department of transportation shall become responsible for collection of the delinquent taxes. The county treasurer of each affected county shall transmit the unpaid tax statement of the railway company to the state department of transportation.

3. Upon the acquisition by the department of payment from the railway company in full liquidation of the delinquent taxes including payment by means of transfer of title to rights of way or other real estate, any tax lien existing prior to ~~such~~ the acquisition or the property on which the taxes were delinquent ~~shall be null and~~ is void ~~and the department shall not pay any of these delinquent taxes to the county treasurer~~. The department shall take title to the rights of way or other real estate for administration, management, collection of rents, and disposal and shall credit all moneys collected or received from the rental or disposal of rights of way or other real estate to the special railroad fund established in section 19 of this Act. Any moneys received as payment for delinquent property taxes shall be credited to the special railroad facility fund established in section 19 of this Act.

In March 1982, the State of Iowa and Iowa Department of Transportation filed an application in the bankruptcy action making claim to all unpaid property taxes due from the trustee to any Iowa unit of local government. Notice was given to the 56 counties in which the railroad owned property. They, the Iowa Association of Counties, and several individuals resisted the State's claim and raised a number of legal issues. The federal court has certified seven questions based on those issues. The court provided the parts of the federal court record that the parties agree is relevant to our determination. The questions have now been submitted for answer in accordance with Iowa R.App.P. 451–57. We will state each question and our response.

1. Do any one of the following have standing under Iowa law to challenge the validity or constitutionality of § 307.29 (1981), *Code of Iowa,* as amended, under the Iowa Constitution: (1) the 56 Iowa counties; (2) county auditors; (3) county treasurers; (4) Bernard Wheeler, as a county treasurer; (5) James Maloney, as a county auditor; (6) the Iowa State Association of Counties; or (7) John Tor-

bert, as an individual resident, property owner, and property taxpayer in Polk County, Iowa, one of the separate affected counties?

■ Our answer to the first question is "yes." John Torbert's affidavit shows he is a resident and property taxpayer in Polk County, through which the railroad runs. As a resident of the county, he has a stake in the outcome of the case because it will affect the amount of revenue available to the county for local services. As a property taxpayer he has a stake in the outcome because it may affect his taxes in the future. The standing of individuals has been recognized in analogous circumstances in other cases. *See Polk County v. Iowa State Appeal Board,* 330 N.W.2d 267, 273 (Iowa 1983); *Warren County v. Judges of Fifth Judicial District,* 243 N.W.2d 894, 897 (Iowa 1976).

We need not decide whether the other parties have standing because the question posed is whether any one of them does. It is sufficient to find that Torbert has standing.

2. If none of the above parties have standing, is the rule by which such standing is denied a form of judicial state action, which deprives these parties of minimum procedural due process and equal protection or substantive due process of law in violation of Art. I, §§ 6 and 9, Constitution of the State of Iowa?

Because Torbert has standing, the predicate for the second question is lacking. It does not require an answer.

3. Are the property taxes due upon the property of this railroad in the State of Iowa which have not been paid from December 20, 1977, up to and including 60 days after April 1, 1982, under the authority of this Court's Order No. 1, "delinquent" within the meaning of § 445.37, *Code of Iowa?*

■ We answer this question "yes." Section 445.37 states when unpaid taxes became delinquent:

In all cases where the half of any taxes has not been paid before October 1 suc-

ceeding the levy, the amount thereof shall become delinquent from October 1 after due; and in case the second installment is not paid before April 1 succeeding its maturity, it shall become delinquent from April 1 after due.

However, if there is a delay of the certification of the tax list to the county treasurer, the amount due shall become delinquent thirty days after such date of certification or October 1, whichever date occurs later. However, such delay shall not affect the due and delinquent dates for special assessments specified by section 384.65.

Thus all railroad taxes· which have been unpaid since the date they were due are delinquent unless there was delay in certification. In the event of delay in certification, the delinquency arose 30 .days after the date of certification or the next October 1st, whichever date occurred later.

4. Does § 307.29 (1981), *Code of Iowa,* have retrospective, as well as prospective application, and if prospective only, from the original date of its enactment, June 2, 1980, or the effective date of the 1981 amendments, July 1, 1982?

■ Our response to this question is that Iowa Code section 307.29 (1981) does not have retrospective application. It is prospective from its original effective date of June 2, 1980. This means it gives collection authority to the department of transportation for all property taxes owed by a railway company that became delinquent after June 2, 1980, and remained unpaid for 60 days.

■ The legislature has provided that a statute "is presumed to be prospective in its operation unless expressly made retrospective." Iowa Code § 4.5 (1983). Statutes affecting substantive rights are construed to operate prospectively unless a legislative intent that they be given retrospective operation clearly appears from their express language or by necessary and unavoidable implication. *In re Estate of Parsons,* 272 N.W.2d 16, 17 (Iowa 1978).

Section 307.29 contains no express language providing for retrospective operation.

The State contends, however, it should be so construed because of necessary implication. The State's argument rests largely on the magnitude and urgency of the problem to be addressed by the Railway Finance Authority as indicated in chapter 307B. The legislature established the authority as a financing mechanism with the purposes stated in section 307B.2. The legislature identified the magnitude and urgency of the problem in section 307B.3. We do not find an intent demonstrated in chapter 307B that section 307.29 operate retrospectively. It will take longer to obtain funds if the statute is only prospective in its operation, but that is not sufficient to demonstrate legislative intent for retrospective operation by necessary and unavoidable implication.

We find the statute to be prospective from June 2, 1980, the date collection authority was given to the department of transportation. Insofar as relevant here, the 1981 amendment merely named the fund into which the collected taxes were to be placed. Even before the amendment, however, those taxes were state property.

5. If the Iowa legislature intended § 307.29 (1981), *Code of Iowa,* as amended, to be applied prospectively and retrospectively, is this statute to be applied retrospectively to (1) June 2, 1980, the original effective date of this section; (2) July 1, 1982, the effective date § 307.29 (1981) was amended; or (3) a date 60 days after the Trustee, in his discretion or as otherwise directed by the Court, pays these unpaid property taxes; (4) all delinquent taxes at least 60 days overdue owed by a railway company in Iowa?

Because section 307.29 is not retrospective, no answer to this question is required.

6. If any one of the parties in Question 1 has standing, does the retrospective application of § 307.29 (1981), *Code of Iowa,* to include delinquent taxes which accrued prior to the enactment of that legislation violate any constitutional rights of the movants? (Art. I, §§ 6, 9, 18, or 21 or Art. III, § 30, Iowa Constitution.)

Because section 307.29 is not retrospective, no answer to this question is required.

7. Does § 307.29 (1981), *Code of Iowa,* create a local or special law or irrational classification of a taxing character which violates equal protection under Art. I, § 6, and uniform taxation under Art. III, § 30, of the Iowa Constitution?

■ Our response to this question is "no." The parties have briefed four constitutional issues. They expand the scope of the question, but we will assume the question is intended to embrace the issues the parties have briefed. Two of them are based on Iowa Const. art. I, section 6, one is based on Iowa Const. art. I, section 9, and one is based on Iowa Const. art. III, section 30. The issues under article I, section 6, involve equal protection and privileges and immunities. The issue under article I, section 9, relates to delegation of legislative power. The issue under article III, section 30, involves local or special laws.

■ When a classification survives an equal protection challenge under article I, section 6, it will also survive a privileges and immunities challenge under the same provision and a local or special law challenge under article III, section 30. *See John R. Grubb, Inc. v. Iowa Housing Finance Authority,* 255 N.W.2d 89, 95–96 (Iowa 1977). Traditional equal protection analysis applies here: "Under that test the classification must be sustained unless it is patently arbitrary and bears no rational relationship to a legitimate governmental interest." *Lunday v. Vogelmann,* 213 N.W.2d 904, 907 (Iowa 1973).

Section 307.29 classifies railroads differently than other property taxpayers. More specifically, it singles out railroads whose property taxes have been delinquent for more than 60 days.

We do not find this classification to be patently arbitrary. Railroads whose property taxes remain delinquent for more than 60 days are more likely than not to be in financial trouble. Two major railroads including the railroad in this case were in bankruptcy reorganization proceedings at the time section 307.29 and chapter 307B

were enacted. It was not irrational for the General Assembly to look to delinquent taxes of railroads as one source of funds or property to help establish a financing mechanism to provide the public with adequate railway services. Moreover, a rational relationship exists between the classification and the state's goal of rehabilitating railway facilities. No one benefits from tax delinquencies. If the state can collect the money or acquire property and use it to upgrade railway services, local government might eventually be freed from the albatross of future delinquencies. No violation of equal protection has been shown. Consequently section 307.29 does not infringe taxpayer rights under Iowa Const. art. I, section 6, or Iowa Const. art. III, section 30, in the respects alleged.

Nor do we find an unconstitutional delegation of legislative power under Iowa Const. art. I, section 9. The argument is that railroads control the classification because they are free to decide whether to pay their property taxes on time. This decision is legislative, according to the argument, because it determines which funds belong to the state and which belong to the counties. Principles governing delegation of legislative power are reviewed in *Polk County v. Iowa State Appeal Board,* 330 N.W.2d 267, 273–74 (Iowa 1983). Under those principles, the decision whether to pay taxes on time is plainly not the exercise of legislative power. Nor is it converted to legislative power by its effect on the source and amount of money subject to the state's collection authority under section 307.29. Normal incentives to pay taxes on time remain. The longer railroads wait to pay their taxes the more they owe, by reason of penalties and interest. In addition, the counties retain their collection authority for 60 days after delinquencies occur. Railroads are thus not always free to decide if their taxes will remain uncollected. We find no merit in the delegation argument.

CERTIFIED QUESTIONS ANSWERED.