IOWA–ILLINOIS GAS AND ELECTRIC COMPANY, Appellant,

v.

IOWA STATE COMMERCE COMMISSION, Appellee,

Iowa Planners Network,
Intervenor-Appellee.

IOWA PLANNERS NETWORK, Appellant,

v.

IOWA STATE COMMERCE COMMISSION, Appellee,

Iowa-Illinois Gas and Electric Company, Intervenor-Appellee.

No. 83–656.

Supreme Court of Iowa.

April 11, 1984.
Rehearing Denied May 10, 1984.

D.H. Sitz and Terry M. Giebelstein of Lane & Waterman, and E.J. Hartman and Brent E. Gale, Davenport, for appellant Iowa-Illinois.

Roger Colton, Ames, for appellant Iowa Planners.

Michael R. May, and Philip E. Stoffregen, General Counsel, and Patrick J. Nugent, Deputy Counsel, Des Moines, for appellee commission.

William F. Sueppel of Meardon, Sueppel, Downer & Hays, Iowa City, for amicus curiae League of Iowa Municipalities.

Terry C. Hancock and Sheila K. Tipton of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for amicus curiae Iowa Power and Light Company.

Jim D. DeKoster and E.R. McCann of Swisher & Cohrt, Waterloo, for amicus curiae Iowa Public Service Company.

Considered by HARRIS, P.J., and McCORMICK, McGIVERIN, SCHULTZ and WOLLE, JJ.

McCORMICK, Justice.

We must here decide issues of standing and the constitutionality of a commerce commission decision reducing a utility's return on excess generating capacity. Respondent Iowa State Commerce Commission used a formula lowering the return of petitioner Iowa-Illinois Gas and Electric Company on what the commission determined to be excess electric generating capacity in a contested case proceeding arising from an Iowa-Illinois application for a rate increase. Petitioner Iowa Planners Network, an unincorporated association, was an intervenor in the agency proceeding. Following the commission decision, Iowa-Illinois and Planners separately petitioned for judicial review, and the cases were consolidated in district court. Upon submission, the district court affirmed the commission in the Iowa-Illinois action but dismissed the Planners action for lack of proof of standing. We affirm the district court on the appeal of Iowa-Illinois and reverse and remand on the appeal of Planners.

A commerce commission ratemaking proceeding is a contested case subject to the Iowa Administrative Procedure Act. Iowa Code § 17A.2(2) (1983). When Iowa-Illinois filed its application with the commission for the 14.1 million dollar rate increase at issue here, Planners filed a petition to intervene to oppose the increase. Planners alleged it was an unincorporated association most of whose twenty members were Iowa-Illinois ratepayers. Iowa-Illinois resisted the intervention, but the commission allowed it without making any finding concerning whether Iowa Planners was aggrieved by the proposal.

The commission ultimately granted part of the rate increase in a decision that became final on June 25, 1982. Iowa-Illinois and Planners separately petitioned the district court for judicial review, and the cases were consolidated for submission. Each petitioner intervened in the judicial review proceeding of the other.

Iowa-Illinois limited its attack to the issues of identifying and denying it a full

return on excess generating capacity. The commission had determined that Iowa-Illinois had an electric generating capacity in excess of an amount necessary to meet peak demand and maintain a reasonable reserve of 25 percent. In its decision the commission adopted a formula adjusting the utility's return on the capacity in excess of the reserve margin. Iowa-Illinois alleged that this decision deprived it of substantive due process in violation of the fourteenth amendment of the United States Constitution and article I, section 9 of the Iowa Constitution.

Planners attacked the decision for not having gone far enough. On the excess capacity issue, it challenged the sufficiency of commission findings, the sufficiency and competency of the evidence, the method of determining excess capacity, and the validity of the formula used by the commission to calculate the excess capacity return adjustment. Planners also challenged the commission's determination of the Iowa-Illinois return on equity and other elements of the decision.

After full submission of the consolidated actions, the district court ruled on the merits of the Iowa-Illinois petition, affirming the decision of the commission. On the Planners petition, the court ruled Planners had not demonstrated it was "aggrieved or adversely affected" by the commission decision and therefore lacked standing to obtain judicial review. The court dismissed Planners' petition, considering Planners' arguments only on the constitutional issue in its intervention in the Iowa-Illinois judicial review proceeding.

I. *Planners' standing.* No issue of Planners' standing arose in district court until the court raised and decided the issue on its own motion after submission of the case. Planners alleged the following facts in its petition for judicial review:

The Iowa Planners Network (IPN) is an unincorporated association with its principal place of business in Iowa City, Johnson County, Iowa. IPN is comprised of twenty (20) members who are residents of Iowa and most of whom are residential ratepayers of Iowa-Illinois Gas and Electric Company. IPN participated in Commerce Commission Docket RPU–81–5 to protect the financial interests of its ratepayer/members and to advocate the use of "management tools (which) would eventually lead to just and reasonable rates." IPN members are planning students, faculty and practitioners.

The commission admitted this allegation in its answer. Iowa-Illinois, as intervenor in that action, did not independently raise the standing issue.

On Planners' appeal, we must decide whether the district court erred in holding that the record did not sufficiently show Planners was aggrieved or adversely affected by the commission decision.

■ Section 17A.19(1) provides that a "party who has exhausted all adequate administrative remedies and who is aggrieved or adversely affected by any final agency actions is entitled to judicial review...." As an association, Planners may represent its members' views. *See Iowa Bankers Association v. Iowa Credit Union Department,* 335 N.W.2d 439, 445 (Iowa 1983). The only requirement of standing at issue here is whether those members are "aggrieved or adversely affected" by the commission decision within the meaning of section 17A.19(1).

■■ In order to meet this requirement a party must show (1) a specific personal and legal interest in the subject matter of the agency decision and (2) a specific and injurious effect on this interest by the decision. *Id.* at 443. The commission argues that the first element in this test required Planners to show that its members had an interest different from that of electric utility ratepayers generally. The specific interest actually required, however, is merely an interest "distinguished from a general interest, such as is the concern of all members of the community as a whole." *City of Des Moines v. Public Employment Relations Board,* 275 N.W.2d 753, 759 (Iowa 1979). The specific personal and legal in-

terest thus need only exist in comparison to the community generally, not with other ratepayers. The standing of taxpayers to challenge governmental action affecting tax rates is analogous. *See, e.g., In re Chicago, Milwaukee, St. Paul and Pacific Railroad Co.*, 334 N.W.2d 290, 293 (Iowa 1983).

Ratepayers have standing to attack rate decisions under similar judicial review provisions in other jurisdictions. *See Di Santo v. City of Warrenville*, 59 Ill.App.3d 931, 935–37, 17 Ill.Dec. 289, 290, 292–93, 376 N.E.2d 288, 289, 291–92 (1978); *American Hoechest Corp. v. Department of Public Utilities*, 379 Mass. 408, 410–11, 399 N.E.2d 1, 3 (1980); *Multnomah County v. Davis*, 35 Or.App. 521, 523 n. 2, 581 P.2d 968, 970 (1978); *City of Houston v. Public Utility Commission*, 618 S.W.2d 428, 430–31 (Tex.Civ.App.1981). *See also Atlantic Telephone Co. v. Public Service Commission*, 390 A.2d 439, 444 n. 5 (D.C.1978); *Central Maine Power Co. v. Public Utilities Commission*, 382 A.2d 302, 314 n. 12 (Me.1978).

 Iowa-Illinois contends it is not bound by the commission's admissions. It alleges it had a right to require Planners to disclose its purpose, its officers and the identity of its members and their interest. Even though Iowa-Illinois raised this claim before the agency, it did not renew it in district court. We believe Iowa-Illinois was obliged to raise the issue in district court if it wished to make an issue of Planners' standing in that forum. *See Schwarzkopf v. Sac County Board of Supervisors*, 341 N.W.2d 1, 3 (Iowa 1983). Moreover, the record does not disclose any basis for questioning the truth of the factual allegations admitted by the commission on the standing issue. When necessary, authority to take evidence on such issues exists in Code section 17A.19(7). Because the record at the time of the court's ruling sufficiently demonstrated Planners' standing, we conclude that the court erred in dismissing Planners' petition.

 Anticipating the possibility of this holding, the commission urges us to decide the merits of Planners' contentions presented to but not ruled on by the district court. If we were to do so, we would not be performing our review function; we would be deciding issues that were not decided by the district court. This would be contrary to our function as a court of review. The only question presented for our review on Planners' appeal is the district court decision dismissing the petition for want of standing. *See Rush v. Ray*, 332 N.W.2d 325, 328 (Iowa 1983). Having determined that the district court erred in dismissing the petition, we reverse and remand on Planners' appeal to permit the district court to decide the case on the merits.

II. *The Iowa-Illinois appeal.* Because the appeals by Planners and Iowa-Illinois are not interdependent, we need not await the outcome of the Planners action to address the Iowa-Illinois appeal. The sole question on that appeal is whether the district court erred in rejecting Iowa-Illinois' substantive due process attack on the commission decision reducing its return on excess generating capacity. For purposes of this appeal, Iowa-Illinois does not challenge the commission finding that it has excess generating capacity. Iowa-Illinois contends that, even if it does, the commission decision violates its due process rights because it denies the utility a fair return on its prudent investment in property used and useful in serving the public and because it penalizes the utility for prudent actions that have not demonstrably harmed its customers.

 "Rate base" is the utility's investment in property, used and useful at the time of inquiry, in rendering utility service. "Rate of return" is the percentage of return that the utility is entitled to earn on its rate base through its rates. *Davenport Water Co. v. Iowa State Commerce Commission*, 190 N.W.2d 583, 588 (Iowa 1971). Due process requires "a fair return on investment." *Id.* at 599. In this case, the commission decision allowed Iowa-Illinois to recover through its rates all costs associated with its entire investment, including depreciation, debt costs, divi-

dends on preferred stock, and costs incidental to maintenance and operation. The effect of the decision was to reduce the earnings available for distribution to common stockholders on a portion of the utility's rate base.

The commission decided that Iowa-Illinois had 199 megawatts of excess generating capacity. Excess capacity was found to be the utility's electric generating capacity exceeding 125 percent of its actual annual peak load during 1980. The commission then employed a formula that had the effect of reducing the return on excess capacity on a graduated scale. Under the formula, the disallowed return increased at an accelerating rate as the excess capacity increased.

Approximately 125 megawatts of new generating capacity was accounted for by Iowa-Illinois' investment in the Ottumwa Generating Station. Five utilities cooperated in building that facility in the late 1970's in response to concern by the commission and others about electrical energy shortages in the 1980's. The plant was completed in May 1981.

The commission found that Iowa-Illinois' decisions to increase its generating capacity by such investments were prudent when made. The commission also refused to exclude the Ottumwa plant from the rate base as not "used or useful." The "used and useful" standard is derived from United States Supreme Court holdings that a utility is entitled to a reasonable return on the value of property used to render services, but "it is not entitled to have included any property not used or useful for that purpose." *Denver Union Stock Yard Co. v. United States*, 304 U.S. 470, 475, 58 S.Ct. 990, 994, 82 L.Ed. 1469, 1476 (1938). The commission noted that the Ottumwa plant was useful to the ratepayers because it could operate more efficiently than other Iowa-Illinois generating facilities.

Iowa-Illinois contends that once the commission finds that a particular investment was prudent when made and is used and useful at the time of the rate determination, the due process clauses of the federal and state constitutions prohibit reduction of the utility's return on any part of its rate base.

In mandating a fair return on a utility's investment, substantive due process does not require a regulatory agency to adopt a particular rate. For the courts to interfere on due process grounds, the return allowed by the agency must be outside a zone of reasonableness. This gives the agency an area of freedom within which "to devise methods of regulation capable of equitably reconciling diverse and conflicting interests." *Permian Basin Area Rate Cases*, 390 U.S. 747, 767, 88 S.Ct. 1344, 1360, 20 L.Ed.2d 312, 336 (1968).

Whether a particular return is reasonable "depends upon many circumstances and must be determined by the exercise of a fair and enlightened judgment, having regard to all relevant facts.... The return should be reasonably sufficient to assure confidence in the financial soundness of the utility and should be adequate, *under efficient and economical management,* to maintain and support its credit and enable it to raise the money necessary for the proper discharge of its public duties." *Bluefield Waterworks & Improvement Co. v. Public Service Commission,* 262 U.S. 679, 692–93, 43 S.Ct. 675, 679, 67 L.Ed. 1176, 1182–83 (1923) (emphasis supplied). Moreover, the fixing of rates requires "a balancing of the investor and the consumer interests," even if the balancing should result in no net revenues for the utility. *Federal Power Commission v. Hope Natural Gas Co.,* 320 U.S. 591, 603, 64 S.Ct. 281, 288, 88 L.Ed. 333, 345 (1944). "Regulation may, consistently with the Constitution, limit strigently the return recovered on investment, for investors' interests provide only one of the variables in the constitutional calculus of reasonableness." *Permian Basin Area Rate Cases,* 390 U.S. at 769, 88 S.Ct. at 1361, 20 L.Ed.2d at 337.

The commission decision in this case does not violate due process merely because the investment in generating capacity was prudent when made. The issue

does not turn on an assessment of fault. *Saint Joseph Stock Yards Co. v. United States,* 11 F.Supp. 322, 329 (W.D.Mo.1935), *aff'd,* 298 U.S. 38, 56 S.Ct. 720, 80 L.Ed. 1033 (1935). Nothing in the constitutional requirement that a utility receive a fair return on its investment prohibits a lower return from the ratepaying public upon a part of the investment that turns out to be unnecessary, even when the utility's decision to make the investment was prudent. The issue for the commission was how to allocate the burdens created by a management investment mistake between ratepayers and utility common stockholders. Utility investors are not insulated from the consequences of diseconomies resulting from a management decision that was prudent when made but which later events prove to have been mistaken.

■ Iowa-Illinois argues, nevertheless, that because the investment was not imprudent and because all of its generating facilities are used and useful, its return should not be affected by excess capacity. This argument ignores the distinction between the usefulness of particular facilities and the usefulness of the total of those facilities. All units may be used and useful when viewed individually, but the determinative issue is whether the cumulative investment is used and useful. This distinction was given effect in *Philadelphia Electric Co. v. Pennsylvania Public Utility Commission,* 61 Pa.Commw. 325, 328–30, 433 A.2d 620, 622–23 (1981), where the court said:

> PECO contends that because its decisions to construct the eliminated units as well as its decisions to construct every other of its generating units, when made, were prudent, the PUC may not now remove any of these properties from rate base because there is presently excess capacity. This argument, however, misses the point of the determination. The PUC's order specifically states that the PUC was "not questioning PECO's management decisions made when these units were constructed." The basis for the order is the finding that to the de-

gree that there is excess capacity, there are generating properties which are not used and useful in rendering service to rate payers.

. . . .

In removing PECO's excess capacity from the rate base the [PUC,] adopting one of the four methods advanced by an expert witness for the Office of Consumer Advocate, chose for removal from the rate base as representative of the excess capacity those units which were least economical. Although there were other methods available, such as factoring the excess capacity over all of PECO's units, we cannot find that the PUC erred by using the method it did. [citation omitted].

The principle underlying the distinction is also recognized expressly in *Madison Gas & Electric Co. v. Public Service Commission of Wisconsin,* 109 Wis.2d 127, 135 n. 15, 325 N.W.2d 339, 343 (1982), and by implication in *Attorney General v. Michigan Public Service Commission,* 412 Mich. 385, 418, 316 N.W.2d 187, 200 (1982), and *City of Cleveland v. Public Utilities Commission,* 63 Ohio St.2d 62, 65–66, 406 N.E.2d 1370, 1374–75 (1980). In the present case the commission factored the excess capacity return adjustment over all of Iowa-Illinois' units rather than pick out particular units for exclusion, but the principle is not affected by use of this method.

■ We find no substantive due process violation in the commission's decision to reduce Iowa-Illinois' return on excess capacity. The utility has not demonstrated that the decision was unreasonable. The commission merely refused to charge Iowa-Illinois customers for a full return on a portion of the utility's investment that did not benefit them. Under the constitutional standard, the Iowa-Illinois stockholders are not denied a fair return on their investment.

We decide only the constitutional issue. In deciding it we do not pass upon the method employed by the commission to determine excess capacity, the formula for

adjusting the return on excess capacity or any statutory or evidentiary issues.

We affirm on the Iowa-Illinois appeal.

AFFIRMED IN PART AND RE-VERSED AND REMANDED IN PART.