**IOWA PLANNERS NETWORK, Appellant,**

v.

**IOWA STATE COMMERCE COMMISSION and Iowa-Illinois Gas and Electric Company, Appellees.**

No. 84–1429.

Supreme Court of Iowa.

Aug. 21, 1985.

Roger D. Colton, Ames, for appellant.

D.H. Sitz and Terry Giebelstein of Lane & Waterman, and E.J. Hartman and Brent E. Gale, Davenport, for appellee Iowa-Illinois.

Philip E. Stoffregen, Gen. Counsel, and Daniel J. Hanson and Dennis J. Downing, Asst. Gen. Counsel, for appellee commission.

Considered by UHLENHOPP, P.J., and HARRIS, McCORMICK, McGIVERIN and WOLLE, JJ.

WOLLE, Justice.

In this appeal ratepayers challenge a decision of the Iowa Commerce Commission granting rate increases to Iowa-Illinois Gas and Electric Company (utility) in response to its proposed tariff filed with the Iowa State Commerce Commission (commission) in February of 1981. Iowa Planners Network (IPN), an advocate for residential ratepayers, intervened in contested case proceedings before the commission to seek elimination of the utility's proposed return on its investment in excess generating capacity. The commission concluded that the utility was entitled to some return on its excess generating capacity, then adopted a formula which allowed the utility a diminishing rate of return as capacity progressively increased above 125% of the utility's annual peak load during 1980. The commission also found that the utility correctly allocated to its investors the capital gain on sale of an electric transmission line.

Both the utility and IPN petitioned for judicial review of that final agency decision. The district court rejected the utility's constitutional challenge to the commission's rate reduction and ruled on its own motion that IPN lacked standing to contest the commission order. In *Iowa-Illinois Gas & Electric Co. v. Iowa State Commerce Commission*, 347 N.W.2d 423 (Iowa 1984), we decided that the utility's challenge lacked merit but concluded that the district court erred in dismissing IPN's petition for judicial review.

Following remand, the district court addressed IPN's petition on the merits and upheld the commission decision. IPN has appealed the district court's judicial review decision, contending that the commission erred (1) in refusing to apply a strict used and useful test to deny the utility any return on its investment in excess generating capacity; (2) in allowing the utility a return on its investment in excess capacity even though the costs associated with that capacity were allegedly excessive and unreasonable; and (3) in allocating to shareholders the gain on sale of capital equipment, a transmission line. We conclude

these contentions are without merit and affirm.

■ Relevant background facts are set forth in our prior decision. When reviewing commission decisions the district court functions in an appellate capacity to apply the standards of Iowa Code section 17A.19(8) and correct errors of law on the part of the agency. *Iowa Southern Utilities Co. v. Iowa State Commerce Commission*, 372 N.W.2d 274, 277 (Iowa 1985). On appeal we apply those standards in determining whether our conclusions are the same as those of the district court. *Northwestern Bell Telephone Co. v. Iowa State Commerce Commission*, 359 N.W.2d 491, 495 (Iowa 1984); *Lefebure Corp. v. Iowa Department of Job Service*, 341 N.W.2d 768, 770 (Iowa 1983). In exercising that function, we must accord proper respect to the expertise of the agency. *Northwestern Bell Telephone Co.*, 359 N.W.2d at 499; *United Telephone Co. v. Iowa State Commerce Commission*, 257 N.W.2d 466, 470 (Iowa 1977). Unless the evidence would compel the agency to rule in a particular way as a matter of law, the reviewing court must leave it to the agency to make the decisions vested by statute in the agency. *Johnston v. Iowa Real Estate Commission*, 344 N.W.2d 236, 240 (Iowa 1984).

I. *Return on Excess Capacity.*

IPN contends that the commission erred in allowing the utility to obtain a return on that portion of its investment which resulted in excess generating capacity. It argues that the commission should have applied a rigid "used and useful" test rather than its own modified formula to determine whether and to what extent the utility was entitled to a return on that investment.

The commission found that the utility had 199 megawatts of excess capacity, defined as that capacity exceeding 125% of the utility's peak load during 1980. *Iowa-Illinois Gas & Electric Co.*, 347 N.W.2d at 428. It then addressed the question whether that excess capacity should be included in the utility's rate base, defined as "the utility's investment in property, used and

useful at the time of inquiry, in rendering utility service." *Id.* at 427; *Davenport Water Co. v. Iowa State Commerce Commission,* 190 N.W.2d 583, 588 (Iowa 1971). The commission rejected IPN's argument that this definition necessarily excluded from the utility's rate base any property not "used and useful." It cited with approval the following language of the proposed commission decision:

> [The used and useful] approach assumes the utility can accurately predict demand.... However, we must recognize advanced forecasting methods are of recent origin and should not be used in this proceeding to measure the reasonableness of [the utility's] past decisions. The "used and useful" approach also requires a decision on how much capacity is needed to meet customer demands. [That] may establish a standard of precision that no utility manager can reasonably be expected to meet.

The commission found:

> The used and useful test did not provide an answer to the question of whether ratepayers should reimburse Iowa-Illinois for its admittedly prudent investment in total capacity in 1981.

The commission then adopted a formula which allowed the utility to recover a diminishing rate of return on its excess capacity as that capacity exceeded 125% of its 1980 peak load, based on the proportion of common equity investment in that capacity.

The district court on judicial review rejected IPN's assertion that the commission was required to apply a strict used and useful test to exclude excess capacity from the utility's rate base. It explained that the commission had authority to use its expertise, background, and experience in selecting an appropriate formula. We agree.

■ The traditional "used and useful" standard for determining what investments will be included in a utility's rate base provides that a utility cannot charge its ratepayers for facilities that are not in use or reasonably necessary to furnish the service. *See Tennessee Gas Pipeline Co. v.*

*Federal Energy Regulatory Commission,* 606 F.2d 1094, 1109 (D.C.Cir.1979); *Davenport Water Co.,* 190 N.W.2d at 588; 73B C.J.S. *Public Utilities* § 34 (1983). The commission is to determine whether property is used and useful by examining the utility's cumulative investments rather than individual units of property. *Iowa-Illinois Gas & Electric Co.,* 347 N.W.2d at 429. That determination is committed to the discretion of the commission. *See Kansas City Power & Light Co. v. State Corporation Commission,* 224 Kan. 86, 88, 578 P.2d 254, 256 (1978); *Pennsylvania Electric Co. v. Pennsylvania Public Utility Commission,* 78 Pa.Commw. 402, 410, 467 A.2d 1367, 1371 (1983); *Philadelphia Electric Co. v. Pennsylvania Public Utility Commission,* 61 Pa.Commw. 325, 328–30, 433 A.2d 620, 622–23 (1981). Each case must be determined on its own facts and circumstances. *Legislative Utility Consumers' Council v. Public Service Co.,* 119 N.H. 332, 343, 402 A.2d 626, 633 (1979); *City of Cleveland v. Public Utilities Commission,* 63 Ohio St.2d 62, 64, 406 N.E.2d 1370, 1374 (1980). So long as the commission satisfies its statutory obligation to set "just and reasonable rates", *see* Iowa Code § 476.8 (1981), the commission is not compelled to use any particular method to ascertain the rate base. *Southwestern Bell Telephone Co. v. Arkansas Public Service Commission,* 267 Ark. 550, 567–68, 593 S.W.2d 434, 445 (1980); *Potomac Electric Power Co. v. Public Service Commission,* 380 A.2d 126, 132 (D.C.1977); *Boston Edison Co. v. Department of Public Utilities,* 375 Mass. 1, 19, 375 N.E.2d 305, 318 (1978), *cert. denied* 439 U.S. 921, 99 S.Ct. 301, 58 L.Ed.2d 314 (1978); *cf., Davenport Water Co.,* 190 N.W.2d at 596 (commission has discretion to choose method of determining fair value of property to be included in rate base). As the Pennsylvania Supreme Court has explained:

> [T]he term "just and reasonable" was not intended to confine the ambit of regulatory discretion to an absolute or mathematical formulation but rather to confer upon the regulatory body the power to

make and apply policy concerning the appropriate balance between prices charged to utility customers and returns on capital to utility investors....

*Pennsylvania Public Utility Commission v. Pennsylvania Gas & Water Co.*, 492 Pa. 326, 337, 424 A.2d 1213, 1219 (1980); *accord In re Jersey Central Power & Light Petition*, 85 N.J. 520, 526–27, 529, 428 A.2d 498, 501, 502 (1981). The commission did not abuse its discretion in concluding that ratepayers should share with the utility's investors the cost of the utility's investment in excess capacity. Neither did the commission err in formulating a mathematical equation which allocated part of that cost to each. As the commission explained:

The formula recognizes that ratepayers should share some of the risks of the capacity planning process, which was undertaken for their benefit, but also recognizes shareholders must absorb a greater percentage of the risk as capacity expands further and further beyond a reasonable level.

IPN contends the commission found the utility's capacity in excess of 125% of peak load was neither necessary nor beneficial to ratepayers and thus was not useful; but the commission stopped short of making such a concrete finding. The commission explicitly recognized that ratepayers derive some benefit, in the form of lower operational costs, from the utility's investment in new generating capacity. The commission was not bound to exclude from the utility's rate base any particular generating unit which created the excess capacity; it could appropriately factor the excess capacity over all the utility's generating facilities. *Iowa-Illinois Gas & Electric Co.*, 347 N.W.2d at 429.

In *City of Cleveland v. Public Utilities Commission*, 63 Ohio St.2d 62, 406 N.E.2d 1370 (1980), the Ohio Supreme Court addressed the issue whether a particular power plant should have been excluded from a utility's rate base because it generated excess capacity which was not useful. The court refused to exclude that plant, concluding that the critical issue was not whether the particular unit provided the utility with excess capacity but whether the net effect of such capacity was to reduce the company's overall cost of service. The court explained:

If such a unit does serve to reduce the net cost of providing electric service, the property should be considered useful....

63 Ohio St.2d at 66, 406 N.E.2d at 1374–75. This statement comports with our own view that the critical determination for the commission was whether the utility's cumulative investment was "used and useful" in a broad rather than a narrow sense. We defer to the commission's expertise in finding that the investment was "used and useful" and in selecting an appropriate formula for determining the extent to which the investment should be included in the rate base.

█ It is noteworthy that different legal principles now govern the commission's allocation of costs associated with excess electric generating capacity. In 1983 the Iowa legislature added to Iowa Code chapter 476 the following provision, quoted in pertinent part:

It is the intent of the general assembly of the state of Iowa to provide for the development of a fair resolution concerning the allocation of costs associated with excess electric generating capacity. It is the policy of this state that it is in the public interest that public utilities subject to rate regulation, at a minimum, be prohibited from including either directly or indirectly in their charges or rates to customers the return on common equity associated with excess electric generating capacity, however this shall not apply to rural electric cooperatives. The commerce commission shall not allow a return on common equity on that portion of a public utility's electric generating capacity which is determined to be excess electric generating capacity.

1983 Iowa Acts ch. 127, § 36, now found at Iowa Code § 476.53 (1985). With one exception not pertinent here, that section governs only those applications for rate changes filed on or after July 1, 1983.

1983 Iowa Acts ch. 127, § 51. Because the legislature specified the effective date of that statute governing a utility's return on investment, we do not give it retrospective application to this proceeding filed in 1981. *See* Iowa Code § 4.5 (1983); *In re Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 334 N.W.2d 290, 293 (Iowa 1983) ("Statutes affecting substantive rights are construed to operate prospectively unless a legislative intent that they be given retrospective operation clearly appears from their express language or by necessary and unavoidable implication.").

We hold that in this proceeding commenced in 1981 the commission did not err in including in the utility's rate base a portion of the utility's investment in excess capacity.

II. *Limiting Return on Excess Capacity to "Reasonable Costs".*

IPN also contends that the utility's investors rather than its ratepayers must absorb the costs associated with excess capacity to the extent that those costs are unreasonable, regardless whether that excess was in some respect used and useful. In support of that contention, IPN cites a prior contested case decision in which the commission held an electric utility's imprudent and unreasonable operating costs could not be included in its rate base and imposed on its ratepayers. *See Re Iowa Public Service Co.*, 46 Pub.Util.Rep. 4th 339, 363 (ISCC 1982). IPN argues that the commission found the utility's excess capacity here constituted an unreasonable cost, and therefore the commission should have concluded that inclusion of any such costs in the rate base would violate the statutory prohibition against "every unjust or unreasonable charge" for utility service. *See* Iowa Code § 476.8 (1981).

■ This contention is without merit because the commission's reasoned decision rejected IPN's view that the cost of all excess capacity above 125% of peak load was unreasonable. The commission did not find those costs unreasonable; it found the investment reasonable when made and beneficial to ratepayers to some extent.

The commission did not err in including in the utility's rate base a measured portion of its investment in excess capacity.

III. *Sale of Capital Equipment.*

On August 27, 1980, the utility sold 67.82 miles of one of its transmission lines and realized an after-tax capital gain of $1,059,-865, 59.1 percent of which was attributable to its investment in this state. The utility recorded its gain in Account 421.1 of the Federal Power Commission's Uniform System of Accounts, a system incorporated by reference into commission rules. *See* 250 Iowa Admin.Code 16.2(476) (adopting uniform system of accounts for public utilities and licensees as set forth in the Federal Power Commission's rules and regulations). The utility treated the gain for rate-making purposes in the same manner that it had for accounting purposes—as a "below the line" account benefiting the utility's investors and not ratepayers.

IPN does not contend that the utility incorrectly recorded the gain below the line for accounting purposes, but argues that accounting practices mandated by statute or rule are not controlling for rate-making purposes. In support of that contention, IPN points to the commission's prior practice of reducing the rate base by capital gains received by investors even though those gains had been allocated to the investors under the Uniform System of Accounts. *See Re Iowa Public Service Co.*, 46 Pub.Util.Rep. 4th at 343 ("[O]ur system of accounts does not dictate the rate-making treatment to be accorded any item of revenue or cost.").

The commission did not rely on its previous decisions in deciding that issue in this case. The commission found that the utility had not been a party to that earlier contested case proceeding and therefore was not bound by the decision in that case. Moreover, the commission noted that its decision in this case was premised on an argument presented by the utility which had not been presented or addressed in the earlier contested case decision.

The commission did not err in allowing the utility in this proceeding to treat the capital gain the same for rate-making purposes as for accounting purposes. Agency decisions in contested case proceedings do not have the binding effect of statutes or rules, and the commission's prior decision was of limited precedential value. *See Young Plumbing & Heating Co. v. Iowa Natural Resources Council*, 276 N.W.2d 377, 382 (Iowa 1979). Moreover, we have held that an agency is entitled to a reasonable range of informed discretion in the interpretation and application of its own rules. *Miller v. Civil Constructors*, 373 N.W.2d 115, —— (Iowa 1985); *Dameron v. Neumann Brothers, Inc.*, 339 N.W.2d 160, 162 (Iowa 1983). The commission could reasonably conclude that the Uniform System of Accounts adopted by it in rule-making proceedings should be followed in this rate-making case. In a rule it had promulgated the commission expressly left open that option by providing:

> *Effect of rules.* In prescribing uniform systems of accounts for public utilities, the commission does not commit itself to the approval or acceptance of any item set out in any account for the purpose of fixing rates or in determining other matters before the commission.

250 Iowa Admin.Code 16.1(2).

The cases IPN cites in support of a contrary conclusion are inapposite. In *United Telephone Co.*, 257 N.W.2d at 473–74, the issue this court addressed was whether a utility had correctly applied commission-adopted accounting rules in classifying certain costs as capital rather than expense items. The dispute concerned only the proper interpretation of accounting rules, not the question whether ratepayers should benefit from capital gains of a utility. We did there decide that treatment of certain taxes for book purposes would not govern for rate-making purposes and that a tax deferral should have been attributed to taxpayers rather than investors. The commission's decision here is not inconsistent with that holding, which rested on the fact that ratepayers had prepaid the taxes at issue and consequently were entitled to deferral. Here, in contrast, the utility had recovered through previous charges only a portion of the depreciation on that property. The investors here received no return on the amount by which the market value exceeded original cost. The commission reasonably allowed the utility to ignore the gain on sale of the transmission line in calculating its rate base.

*Davenport Water Co.*, 190 N.W.2d at 610–11, is also distinguishable. In that case, the utility calculated depreciation using a method prescribed in the Internal Revenue Code, but the commission rejected that calculation and required use of an alternative method. This court concluded that the commission did not abuse its discretion in imposing the alternative method. That case clearly does not require that the commission ignore a utility's accounting system in connection with rate-making proceedings. The commission here acted within its informed discretion in interpreting and applying its own rules to allocate the gain on sale of the transmission line to investors.

Finally, *Democratic Central Committee v. Washington Metropolitan Area Transit Commission*, 485 F.2d 786 (D.C.Cir.1973) is also distinguishable. The court there concluded that agency accounting practices would not control a rate-making proceeding until the court satisfied itself that those practices survived a rationality test. *Id.* at 819–20. The court explained further that the allocation of certain gains between consumers and investors rested on equitable considerations. *Id.* at 821. IPN has not shown that the commission ignored equitable considerations or acted arbitrarily in allocating the entire capital gain to investors for rate-making purposes as well as accounting purposes.

We affirm the decision of the district court which on judicial review found that the commission had not erred in resolving the issues raised by IPN in this proceeding.

AFFIRMED.