**IOWA POWER AND LIGHT COMPANY, Iowa-Illinois Gas and Electric Company, Iowa Public Service Company, Iowa Electric Light and Power Company, Iowa Southern Utilities Company, and Union Electric Company, Petitioners-Appellees,**

**Office of Consumer Advocate, Iowa Association of Municipal Utilities, Heartland Consumers Power District, Missouri Basin Mutual Power Agency, and 16 Iowa Municipalities, Intervenors-Appellees,**

**v.**

**IOWA STATE COMMERCE COMMISSION, Respondent-Appellant.**

**Board of Water Works Trustees of the Ottumwa Water Works and Hydro-Electric Plant and Iowa Consumer Groups, Intervenors-Appellants.**

**No. 86–599.**

Supreme Court of Iowa.

July 22, 1987.

Rehearing Denied Aug. 21, 1987.

Susan Allender, David J. Lynch, and Diane Munns, Office of Gen. Counsel, for appellant Com'n.

Michael R. May of Barrett & Trott, Des Moines, for appellant Bd. of Water Works Trustees of the Ottumwa Water Works and Hydro-electric Plant.

Roger D. Colton, Boston, Mass., for appellant Iowa Consumer Groups.

Terry C. Hancock and Sheila K. Tipton of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for petitioner-appellees.

James R. Maret and Daniel J. Fay, for appellee Consumer Advocate Div., Iowa Justice Dept.

David P. Yaffe and Sharon K. Ochs of Duncan, Allen & Mitchell, Washington, D.C., Robert Pflueger of Pflueger, Kunz & McLaughlin, P.A., Ortonville, Minn., and

LeRoy R. Voigts and Randall G. Horstmann of Nyemaster, Goode, McLaughlin, Emery & O'Brien, Des Moines, for intervenor-appellee Missouri Basin, et al.

HARRIS, Justice.

The question here is whether respondent Iowa state commerce commission[1] properly discharged its statutory mandate in setting rates for alternate energy production facilities [AEP's] and small hydro facilities. The commission's action in setting a statewide, fixed, minimum rate was challenged by seven investor-owned public utilities. The district court found the challenge was valid. We agree.

Both congress[2] and the Iowa legislature have enacted legislation intended "to encourage the development of alternate energy production facilities and small hydro facilities." Iowa Code § 476.41.[3] Enacted by the Seventieth General Assembly, the legislation now appears as Code sections 476.41 through 476.45. Its stated purpose is "to conserve our finite and expensive energy resources and to provide for their most efficient use." Iowa Code § 476.41.

Under the scheme the commission must require electric utilities (1) to purchase electricity from the alternate sources mentioned, and (2) to provide supplemental or backup power for the alternate sources at a reasonable rate.

The focal point of this suit is Iowa Code section 476.43. Under section 476.43(2) the commission is required, upon the application of an AEP owner or of any interested party, to establish "just and economically reasonable rates for electricity" at levels that stimulate the development and continuation of AEP and small hydro energy technology. In setting rates the board (here commission) is directed to consider the following factors:

a. The estimated capital cost of the next generating plant, including related transmission facilities, to be placed in service by the electric utility serving the area.

b. The term of the contract between the electric utility and the seller.

c. A levelized annual carrying charge based upon the term of the contract and determined in a manner consistent with both the methods and the current interest or return requirements associated with the electric utility's new construction program.

d. The electric utility's annual energy costs, including current fuel costs, related operation and maintenance costs, and other energy-related costs considered appropriate by the [commission].

Iowa Code § 476.43(3). Section 476.43(4) accords the commission discretion to consider additional factors in setting rates.

The commission promptly responded to this mandate. In order to set rates it undertook a rulemaking proceeding and published notice. After comment was invited and received from the public the commission promulgated and published a proposed regulation. It established a fixed, minimum purchase, statewide rate of 6.5¢ per kWh for electricity purchased from the AEP's and from the small hydro generating plants.

Unsuccessful in protesting the regulations before the commission, the utilities brought this action for judicial review. Other litigants joined the dispute, one by way of a separate petition for judicial review, the rest by intervention. Issues were joined on a number of contentions and were decided by the district court. The district court invalidated the challenged regulation in a decision which is challenged by various parties by appeal and cross-appeal. To the extent we find they were preserved and are material to our resolution of the case the

---

1. The agency's name has been changed since these proceedings began. It is now known as the utilities division of the department of commerce. References in this opinion will be to the former name.

2. Federal legislation will be described in a subsequent division of this opinion.

3. All references are to the 1987 Code.

various challenges will be described in subsequent divisions.

■ I. The scope of a district court's review of agency action is prescribed by Iowa Code section 17A.19. On appeal to us under section 17A.20: "our review is confined to the correction of errors of law made by that court." *Polk County Drainage Dist. Four v. Iowa Natural Resources Council,* 377 N.W.2d 236, 239 (Iowa 1985). In determining "whether an agency violated its duty to consider all relevant factors in arriving at its decision, the entire record before the agency must be examined." *Iowa Citizen/Labor Energy Coalition, Inc. v. Iowa State Commerce Comm'n,* 335 N.W.2d 178, 181 (Iowa 1983). An agency rule is presumed valid; the burden is on the party challenging it to demonstrate that a "rational agency" could not have concluded the rule was within its delegated authority. *Iowa-Illinois Gas & Elec. v. Iowa State Commerce Comm'n,* 334 N.W.2d 748, 751–52 (Iowa 1983) (citing *Milholin v. Vorhies,* 320 N.W.2d 552, 554 (Iowa 1982)). To be valid, "a rule adopted by an agency must be within the scope of powers delegated to it by statute." *Iowa-Illinois Gas & Elec.,* 334 N.W.2d at 752 (citing *Haesemeyer v. Mosher,* 308 N.W.2d 35, 37 (Iowa 1981)).

II. The district court correctly rejected a threshold challenge asserted by a number of intervening Iowa consumer groups. We agree that the utilities and the intervenor Missouri Basin Group[4] have standing to question the regulation. According to the intervenors, Missouri Basin Group should not be allowed to challenge commission rules because, as local governmental entities, its members are precluded from mounting a "constitutional attack upon state legislative enactments," and because they failed to plead or prove any legal interest in the relief they seek. The consumer groups claim the utilities were not "aggrieved" or "adversely affected" by the challenged agency action because the proposed rules have no specific or injurious effect upon their interests.

■ We think the district court correctly concluded that the utilities and Missouri Basin Group have sufficient stake in the outcome of these proceedings for standing. According to Iowa Code section 17A.19(1), parties who have "exhausted all adequate administrative remedies" may seek judicial review of final agency action upon showing that they are "aggrieved or adversely affected" thereby. In order to make such a showing

> a party must [demonstrate] (1) a specific personal and legal interest in the subject matter of the agency decision and (2) a specific and injurious effect on this interest by the decision.

*Iowa-Illinois Gas & Elec. Co. v. Iowa State Commerce Comm'n,* 347 N.W.2d 423, 426 (Iowa 1984) (citing *Iowa Bankers Ass'n v. Iowa Credit Union Dep't,* 335 N.W.2d 439, 445 (Iowa 1983)). The specific interest required for standing needs only to be distinguishable from "a general interest, such as is the concern ... of the community as a whole." *Iowa-Illinois Gas & Elec. Co.,* 347 N.W.2d at 426 (citing *City of Des Moines v. Public Employment Relations Bd.,* 275 N.W.2d 753, 759 (Iowa 1979)). We said in *Iowa Bankers Ass'n,* 335 N.W.2d at 444, that a party only needs to show some injury to an interest which is distinguishable from that of the general public; a party may have standing without being the primary object of the agency action.

■ Local governments lack standing to challenge the constitutionality of their sovereign's enactments. *Board of Supervisors of Linn County v. Iowa Dept. of Revenue,* 263 N.W.2d 227, 232 (Iowa 1978) (citing *Warren County v. Judges of the Fifth Judicial Dist.,* 243 N.W.2d 894, 897 (Iowa 1976); *see also Hunter v. City of Pittsburgh,* 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907)). But Missouri Basin Group cannot be excluded here on this principle. At least one of its members is not an

---

**4.** The Missouri Basin Group is an agency established under chapter 28E of the Iowa Code to plan and provide for the electric power and energy needs of its fifty-six member municipalities. Pursuant to various "S–1" contracts between Missouri Basin and its Iowa members, Missouri Basin supplies electricity which its municipalities are obligated to purchase.

Iowa municipality or entity. Western Minnesota Municipal Power Agency is a municipal corporation and political subdivision of Minnesota, a member of the non-rate-regulated utilities forming Missouri Basin Group, and a party to all S–1 contracts involving the Iowa municipalities joined in these proceedings.

The utilities and Missouri Basin Group have specific personal and legal interests in the challenged regulations which are sufficient for standing. Missouri Basin Group is forced by the proposed regulations to choose between violating the exclusivity provisions of its S–1 contracts, thus facing the legal consequences flowing from a breach, and violating the express terms and provisions of the challenged statutes, with consequent likelihood of incurring civil penalties. This conflict between the Basin's pecuniary and penal interests is clearly distinguishable from any threat the agency's action poses to the general public. The utilities also have interests which are inextricably tied to the subject matter of the suit. The commission's proposed regulations would require the utilities to enter into binding contracts to buy AEP electricity at a price set by the state. Missouri Basin Group and the utilities have standing.

III. In setting the statewide, fixed, minimum rate, the commission rejected periodic contested case determinations as the means of setting purchase rates for individual utilities. The key issue in this litigation is whether it was appropriate for the commission to reach such a wholesale determination, thereby denying the utilities the right to have the rates set individually, on a contested case basis.

The utilities contend the commission was without authority to short-circuit the rate-making process, thus depriving them of the right to have each rate fixed on the basis of the four statutory criteria set out in section 476.43(3). The commission contends a contested case process is unnecessary and would be disadvantageous. The commission argues it would have "placed an insurmountable burden" on the AEP's had they been forced to proceed on a contested case

basis because they would then have been required to undertake extensive discovery of information largely within the exclusive control of the utilities. It would have been difficult for the AEP's to project their purchase rates and, therefore, to obtain financing for their projects.

■ Administrative agencies have only such authority as is specifically conferred upon them by the legislature or necessarily inferred from the statutes creating them. *Quaker Oats Co. v. Cedar Rapids Human Rights Comm'n*, 268 N.W.2d 862, 868 (Iowa 1978). In *Holland v. State*, 253 Iowa 1006, 1010, 115 N.W.2d 161, 163 (1962), we held:

> An administrative body may not use the device of promulgating rules to change or add to the law; they ... must be reasonable and used for the purpose of carrying out ... legislative enactments.

*See also Hiserote Homes, Inc. v. Riedemann*, 277 N.W.2d 911, 913 (Iowa 1979) (exercise of an agency's expert discretion in adopting rules is limited by legislative intent and the language of the enabling act).

■ Iowa Code section 476.43(3) specifically provides that the commission *"shall* base the rates for new facilities or new capacity from existing facilities" on four factors. (Emphasis added.) By failing to apply these four statutory factors the commission disregarded the legislature's mandate. The commission did not base the AEP rates upon "the estimated capital cost of the *next* generating plant ... to be placed in service *by the electric utility serving the area."* Rather, the commission based the rate upon the plant most recently completed in Iowa, applying the unique facts and circumstances surrounding one Iowa utility to every service area in the state.

The commission also failed to base the individual utility's rates, as required by Iowa Code section 476.43(3)(b), upon the terms of the contract existing between each electric utility and its sellers. As the district court concluded, the commission, in assessing "levelized annual carrying

charges," ignored the terms of contracts and new construction programs of each utility. Pursuant to Iowa Code section 476.43(3)(d) the commission also should have considered the "annual energy cost" of each individual utility in setting its AEP rate instead of assessing only one utility's annual average. These failures, as the district court correctly held, amounted to an attempt by the commission to legislate. The action went beyond the commission's clear and unambiguous statutory directive.

Nowhere in the disputed statutory scheme is the commission empowered to adopt a uniform statewide rate for all purchases of AEP energy by all electric utilities in Iowa. The statutes instead demand that the commission consider the unique individual circumstances surrounding each utility and resolve the rate disputes by contested case proceedings.

The commission's challenged regulations were properly stricken by the district court.

IV. The parties raise a number of arguments concerning federal preemption. The scheme envisioned in Iowa Code sections 476.41–.45 and in the challenged regulations was intended to apply both to rate-regulated and non-rate-regulated utilities. The district court held the federal government and the federal energy regulation commission (FERC) have preempted a part of the intended field; it held that purchases by non-rate-regulated utilities from AEP's were subject to federal regulation and hence not subject to Iowa regulation. The commission separately assigns this holding as error.

■ The federal government in exercising power granted to it by the United States Constitution is supreme against the reserved powers of the states; states may not interfere with the federal government's exercise of those powers. *See* U.S. Const. art. IV, § 2; *Pacific Coast Dairy v. Department of Agric. of California,* 318 U.S. 285, 63 S.Ct. 628, 87 L.Ed. 761 (1942).

■ The commission claims it had independent, non-conflicting "state-derived authority" to impose the challenged rates.

Because its exercise of "separate and distinct" state authority furthered rather than hindered the purpose underlying the federal legislation,[5] the commission claims its authority was not preempted. The commission has a backup contention, based on its authority under federal law to define which utilities are rate-regulated. The commission contends this authority carries with it the authority to "define those classes in a manner consistent with state policies" and to decide how to treat those classes under state law.

The district court however correctly observed a congressional intent to distinguish, in regulating cogeneration and small power facilities, between state regulated electric utilities and nonregulated electric utilities. For example 16 U.S.C. section 824a–3(f) separately directs implementation of the rules: to each state regulatory authority for the utilities over which it holds ratemaking authority; to the federal commission for "each nonregulated electric utility."

The statute goes on to provide for judicial review and enforcement of its provisions "respecting any proceeding conducted *by a state regulatory authority or [by a] non-regulated electric utility*"; and it allows aggrieved persons the opportunity to enforce any requirement *"established by a state regulatory authority or [by a] non-regulated electric utility."* 16 U.S.C. § 824a–3(g) (emphasis added). In 16 U.S.C. section 824a–3(h) the commission is further empowered to enforce the requirements of the statute *"against any state regulatory authority or nonregulated electric utility."* (Emphasis added.)

We think congress intended to preempt only that part of the field which was not already state-regulated.

■ The utilities, as cross-appellants, also raise a preemption argument. The district court correctly refused to hold that the commission's adoption of AEP purchase rates in excess of avoided costs violated section 210 of the public utility regulatory policies Act of 1978 [PURPA] and

---

**5.** Encouraging the development of alternate energy production.

was a matter preempted by federal law. *Consolidated Edison Co. v. Public Serv. Comm'n,* 63 N.Y.2d 424, 483 N.Y.S.2d 153, 472 N.E.2d 981 (N.Y.App.1984), *appeal dismissed,* 470 U.S. 1075, 105 S.Ct. 1831, 85 L.Ed.2d 132 (1985).

The utilities' argument that the doctrine of preemption prevents the commission from adjusting existing AEP purchase contracts with state-regulated utilities is also without merit. As the district court correctly found, the broad language of the federal regulations accompanying PURPA does not suggest federal preemption:

> The Commission has set the rate for purchases at a level which it believes appropriate to encourage cogeneration and small power production, as required by section 210 of PURPA. While the rules prescribed under section 210 of PURPA are subject to the statutory parameters, *the states are free under their own authority to enact* laws or regulations providing for *rates which would result in even greater encouragement of these technologies.*

(Emphasis added.)

The federal government thus undertook only a part of the field; it expressly and clearly left the states free to otherwise regulate under their own authority.

V. The utilities on cross-appeal also challenge the regulations under the contract clause of the United States Constitution. U.S. Const. art. I, § 10, cl. 1. We do not address this question because it would have no effect on the disposition of the appeal. *See Motor Club of Iowa v. Department of Transp.,* 251 N.W.2d 510, 519 (Iowa 1977) ("We do not consider constitutional questions unless it is necessary for the disposition of the case.").

Under *Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983), the question would turn on whether the state: (1) has a significant and legitimate public purpose underlying its action; and (2) has adjusted the rights and responsibilities of the contracting parties on the basis of reasonable conditions and a character appropriate to the public purpose which justifies

the state action. *Energy Reserves Group,* 459 U.S. at 411–12, 103 S.Ct. at 704–05, 74 L.Ed.2d at 580–81. The second part of the Energy Reserves Group's equation will depend on the records made in cases challenging regulations developed in accordance with this opinion. Further comment on the question is inappropriate here.

The district court is commended for an exhaustive and carefully considered decision.

AFFIRMED.

All Justices concur except REYNOLDSON, C.J., who takes no part.