OFFICE OF CONSUMER ADVOCATE, CONSUMER ADVOCATE DIVISION, IOWA DEPARTMENT OF JUSTICE, Appellant,

v.

UTILITIES BOARD, UTILITIES DIVISION, IOWA DEPARTMENT OF COMMERCE, Appellee.

U S West Communications, Inc. f/k/a Northwestern Bell Telephone Company, Intervenor.

No. 91–471.

Supreme Court of Iowa.

June 17, 1992.

As Amended on Denial of Rehearing July 17, 1992.

James R. Maret, David R. Conn, and Alice J. Hyde, Des Moines, for appellant.

Susan Allender and Allan Kniep, Des Moines, for appellee.

William K. Schaphorst, Des Moines, for intervenor U S WEST Communications, Inc. f/k/a Northwestern Bell Telephone Co.

Stuart W. Conrad and Paul S. DeFord of Lathrop & Norquist, Kansas City, Mo., and Todd A. Elverson of Eichhorn, Elverson & Vasey, Des Moines, for amicus curiae, Iowa Indus. intervenors.

Considered by HARRIS, P.J., and LARSON, LAVORATO, NEUMAN, and SNELL, JJ.

LARSON, Justice.

Under Iowa's utility regulation statutes, a utility company seeking a rate increase may apply to the Utilities Board of the Iowa Department of Commerce (board) for a temporary rate increase. The board has authority to allow temporary increases at rates set by the board, and the temporary rates will prevail until the board rules on the rate increase application and sets permanent rates. If the permanent rates are set lower than the temporary rates, the utility company must refund the excess revenue collected under the temporary rates. If the permanent rates are higher than the temporary rates, however, the utility is not permitted to charge the difference to the customer as a retroactive rate increase. In that case, the company must simply forego any unrealized additional revenue it would have received if the permanent rates had been allowed at the commencement of its rate increase proceeding.

This appeal involves a refund of telephone charges collected under temporary

rates by Northwestern Bell Telephone Co. (now known as U S WEST Communications, Inc.) pursuant to an order of the board. The Office of Consumer Advocate (OCA) objected to the refund plan because customers who had overpaid under the temporary rates would not receive full refunds. Northwestern Bell and the board (hereinafter collectively referred to as Northwestern Bell) defend the refund plan on the basis that it is consistent with Iowa Code section 476.6(13) (1987) and a proper exercise of the board's discretion in ordering refunds. The district court affirmed the board's approval of the proposed refund plan, and OCA appealed. We affirm.

■ In reviewing agency action, a district court functions in an appellate capacity to correct errors of law by the agency. Iowa Code § 17A.19(8); *Iowa Planners Network v. Iowa State Commerce Comm'n*, 373 N.W.2d 106, 108 (Iowa 1983). In determining whether the agency committed errors of law, the court gives weight to the agency's construction of the statutes, but it is not bound thereby. *Woodbine Community Sch. Dist. v. PERB*, 316 N.W.2d 862, 864 (Iowa 1982). There are no disputed facts in this case. Our review is limited to determining if the board, and the district court, correctly applied the refund provisions of section 476.6(13).

In 1988, Northwestern Bell filed an application with the board for increased rates on several categories of telephone services. The company was granted temporary authority to increase certain telephone charges at rates set by the board during the pendency of the rate application. *See* Iowa Code § 476.6(13). Northwestern Bell collected $26.680 million additional revenue under the temporary rates.

The board's final order determined that Northwestern Bell should be granted additional revenues of $25.481 million, which was $1.2 million less than the amount actually collected under the temporary rates. The permanent rates set by the board were higher than the temporary rates for some categories of services but lower for others. Some ratepayers had therefore underpaid during the pendency of the rate application while others, principally local service subscribers, had overpaid.

■ Under section 476.6(13), the $1.2 million overpayment is to be "refund[ed] in a manner to be prescribed by the board...." The total amount of the overpayment is not an issue here; the only issue is whether those customers who had overpaid under the temporary rates should be given full refunds, as OCA contends, or whether the total of the overpayments must be credited against the total underpayments, as Northwestern Bell contends.

In relevant part, Iowa Code section 476.6(13) provides:

*Temporary authority.* Upon the request of a public utility, the board shall, when required by this subsection, grant the public utility temporary authority to place in effect any or all of the suspended rates, charges, schedules or regulations by filing with the board a bond or other undertaking approved by the board conditioned upon the refund in a manner to be prescribed by the board of any amounts collected in excess of the amounts which would have been collected under rates, charges, schedules or regulations finally approved by the board.

Both OCA and Northwestern Bell look to section 476.6(13) and *Northwestern Bell Telephone Co. v. Iowa State Commerce Commission*, 359 N.W.2d 491 (Iowa 1984), to support their respective arguments. OCA contends that these authorities support its argument for full refunds to each customer because anything less than full refunds would result in excessive charges to those customers who had overpaid. Northwestern Bell responds that section 476.6(13) requires a utility to refund its excess *revenue* determined by subtracting the total amount of revenue that would have been generated by using the permanent rates from the total amount actually received under the temporary rates. The statute does not mention refunding of customer charges, nor in any way does it suggest customer-specific refunds. In addition, section 476.6(13) expressly leaves

the manner of refunds to the discretion of the board.

The problem in this case arises from the fact that, although final rates were increased for both local and long-distance services, Northwestern Bell's long-distance customers had paid no increased rates during the interim period. In ordering Northwestern Bell to submit a refund plan, the board was aware of this disparity and ordered Northwestern Bell to "address the fact that the revenue increase for final rates will be spread to all revenue classifications, except access; while the interim rate revenue increase was spread only to the local service revenue classification."

The refund plan approved by the board proposed an offset of total underpayments against total overpayments rather than to return to each customer the amount actually overpaid by that customer. OCA complains that this plan requires local service customers to subsidize long-distance customers. OCA contends that the refund plan must be customer-specific, and each customer must be refunded the difference between the interim amount actually paid and the amount that would have been paid under permanent rates as approved by the board.

As Northwestern Bell notes, this would require it to bear all of the risk resulting from differences in rate design between temporary and final orders. This is so because it is prohibited from retroactively collecting underpayments from customers who had not realized a temporary rate increase. If Northwestern Bell is required to make full refunds to the customers who have overpaid and also absorb those amounts underpaid by other customers, the target revenue of $25.481 million approved by the board will not be realized.

OCA argues that this is a risk that must be assumed by the utilities, that section 476.6(13) was designed to protect customers from temporary rates that are later determined to be higher than the rates established in the board's final order. Also, the statute was not designed to protect a utility against the possibility of full refunds under these circumstances.

Northwestern Bell counters that the risk is to be borne equally and that section 476.6(13) was not designed solely to protect the customer from temporary rates later determined to be too high. This statute was designed to balance the interests of the utility and its customers, and the statute does not require a utility to make refunds in such a manner as to realize less than its approved level of revenue. Further, it points out temporary rates, which determine the amount of overpayment or underpayment, are set by the board, not by the utility company.

Interpretation of the refund provisions of chapter 476 involves a weighing of the interests of both the utility company and the customer, just as in the rate-making process itself. As we have noted,

[r]ate-making is a legislative function and public policy weighs on both sides of the process. The state has an interest in securing reasonable rates for its citizens, and the burden of proving that the rates are reasonable and just is on the utility company. On the other hand, one of the primary functions of the rate system is to provide for producer motivation and capital-attraction for the utility company and we have said that due process requires a fair return on utilities' investments.

*Office of Consumer Advocate v. Iowa State Commerce Comm'n,* 432 N.W.2d 148, 151 (Iowa 1988) (citations omitted).

In *Northwestern Bell,* we said this with respect to refunds:

As to the manner of refunding, section 476.6(9) provides for collection of temporary rates "conditioned upon the refund *in a manner to be prescribed by the commission* of any amounts collected in excess of the amounts which would have been collected under rates, charges, schedules or regulations finally approved by the commission." ... Bell contends that refunds should be made "across the board," while the commission desires to have refunds made on a rate-by-rate or schedule-by-schedule basis. The commission makes a persuasive argument that its mode of refunding will likely return

the money to ratepayers in closer proportion to the amounts paid by them. In addition, this authority is expressly committed to the commission by the quoted statute. We perceive no abuse of discretion in the commission's refunding preference, and approve it. The district court erred in holding otherwise.

*Northwestern Bell,* 359 N.W.2d at 499–500.

As the district court pointed out in this case, there is nothing in *Northwestern Bell,* or in chapter 476, that suggests that the distribution method must be on a customer-specific basis. The statute and *Northwestern Bell* both make it clear that the emphasis is on the amount of revenue generated under the temporary rates, not on the difference between individual customers' payments under temporary and permanent rates. Further, as we noted in *Northwestern Bell,* section 476.6(13) anticipates refunds only in "close[ ] proximity to the actual overpayment." *Id.* at 500.

The refund plan approved here will provide close proximity between the amounts ultimately received as refunds and the amounts overpaid. Moreover, many local service customers are also long-distance customers and will therefore receive both the benefits and the burdens of Northwestern Bell's proposed refund plan.

We conclude that the proposed refund plan in this case complies with the requirements of section 476.6(13), and the manner in which it is to be implemented is within the discretion granted by that section to the board. Accordingly, we affirm.

AFFIRMED.