# In the Iowa Supreme Court

No. 23–1199

Submitted October 10, 2024—Filed April 4, 2025

**1000 Friends of Iowa; Bill Barnes, Inc.; Bradley E. Coulson; Teresa M. Coulson; Sondra K. Feldstein Revocable Trust; and Stuart I. Feldstein Revocable Trust,**

Appellants,

vs.

**Polk County Board of Supervisors,**

Appellee.

Appeal from the Iowa District Court for Polk County, Jeanie K. Vaudt, judge.

Plaintiffs appeal the dismissal of their lawsuit challenging the county's granting of a rezoning application. **Reversed and Remanded.**

McDermott, J., delivered the opinion of the court, in which Christensen, C.J., and Waterman and Mansfield, JJ., joined. McDonald, J., filed an opinion concurring in part and dissenting in part, in which Oxley and May, JJ., joined.

CeCelia C. Ibson (argued) of Ibson Law Firm, Des Moines, for appellants.

Kimberly Graham, Polk County Attorney, and Meghan L. Gavin (argued), Assistant Polk County Attorney, for appellee.

**McDermott, Justice.**

A county board of supervisors approved a nonprofit entity's application for a zoning status change for a parcel of land in rural Polk County. A different nonprofit entity and several landowners who claim to live near the parcel filed a lawsuit challenging the rezoning decision. The board of supervisors moved to dismiss the lawsuit, arguing that the plaintiffs lacked standing and were subject to heightened pleading requirements under Iowa's Municipal Tort Claims Act. The district court granted the motion and dismissed the case. In this appeal, we must decide whether the Act's pleading requirements and penalties apply to the plaintiffs' lawsuit challenging the legality of a rezoning decision and whether the plaintiffs have standing to sue.

### I. Factual and Procedural Background.

Because this case involves an appeal from a ruling on a motion to dismiss, we accept the facts as alleged in the petition as true. *Meade v. Christie*, 974 N.W.2d 770, 772 (Iowa 2022). The petition alleges that in 2022, Darrell Geisler agreed to sell a portion of his farmland in an unincorporated area of Polk County to the Family Leader Foundation. The Foundation is an Iowa nonprofit entity with the mission to "strengthen families, by inspiring Christ-like leadership in the home, the church and the government." The portion of land at issue was once used for agricultural-related activities, and in particular, a seasonal business that included a corn maze and pumpkin patch that were authorized under a conditional-use permit issued by the county. The Foundation planned to build a "destination office and event venue, intended to include an outdoor amphitheater and a bed-and-breakfast, among other features" on the parcel.

Before the sale could be finalized, however, the land first needed to be rezoned. In October 2022, the Foundation applied to the Polk County Board of Supervisors to request that the Polk County Zoning Commission change the future land use map classification from "agricultural" to "neighborhood commercial" and to change the zoning map from "agricultural district" to "mixed use district." The board of supervisors referred the application to county staff for further investigation and reporting.

County staff recommended that the supervisors deny the application. In its report provided to the zoning commission, county staff stated that although the northwestern corner of the proposed rezoning area contained several structures associated with the pumpkin patch and related event space, the rest of the proposed rezoning area was mostly farmland used for row crops. The surrounding area was primarily agricultural with relatively few houses, according to the report, with the closest commercial development over four miles away within the City of Ankeny. Staff advised that if the board approved the application, the existing water lines would be insufficient to provide fire suppression for the proposed future office and event space and that a traffic study would need to be conducted to ensure that the area could handle the anticipated increased traffic load.

The staff's report also discussed how the proposed redevelopment would upend goals identified in the county's 2050 Comprehensive Plan (adopted in 2022), such as "[p]rotect[ing] large contiguous areas of prime farmland with a focus on northwest and northeast Polk County" and "[l]imit[ing] unincorporated development within urban fringe areas." The county staff ultimately concluded in the report that the proposed zoning amendments would facilitate commercial redevelopment "fundamentally incompatible" with the surrounding land use.

The zoning commission thereafter met and, by a 5–1 vote, recommended the denial of the rezoning application. The zoning commission concluded that the Foundation's proposed plan for the site was "fundamentally inconsistent" with future land-use goals. The zoning commission submitted its recommendation and the staff's report to the board of supervisors.

The board of supervisors considered the rezoning application at three different board meetings. To prepare for these meetings, the board of supervisors sent postcards to "property owners beyond the traditional radius employed, for example, in urban areas" and published public notices about its meetings. During these meetings, several supervisors raised concerns about the proposed rezoning, including that the action might constitute illegal "spot zoning" and infrastructure deficiencies. Nonetheless, the board of supervisors, in a 3–2 vote, approved the Foundation's application.

Soon after, a nonprofit entity named 1000 Friends of Iowa and five individual landowners claiming to live near the Geisler farm sued the board to challenge the rezoning decision under Iowa Code § 335.18 (2023). 1000 Friends of Iowa bills itself as a "statewide, membership-based organization focused on responsible and equitable land use and addressing the impacts of irresponsible land use." The plaintiffs' challenge to the board's approval of the rezoning application comes as three claims: (1) the board's action violated the "2050 Polk County comprehensive land use plan" and was thus illegal, (2) the board's action violated the Polk County zoning ordinances because rezoning "by amendment" is not permitted, and (3) the board's action constituted illegal spot zoning. The plaintiffs asked the district court to issue an order invalidating the board's decision and returning the parcel to its prior zoning status.

The board filed a motion to dismiss the lawsuit. As to the individual plaintiffs, the board asserted that the petition failed to adequately allege any personal or legal interest in the board's action and failed to establish standing as taxpayers. As to 1000 Friends, the board argued that the petition failed to adequately allege organizational standing. The plaintiffs resisted the motion.

At the hearing on the motion, the plaintiffs made an oral motion to amend their petition. The board conceded that the plaintiffs could establish standing if they "filled in the holes" in the petition, but the board argued that the plaintiffs were precluded from amending the petition under Iowa Code § 670.4A, part of the Iowa Municipal Tort Claims Act that imposes a heightened pleading requirement in lawsuits against municipalities. If § 670.4A applies, and if a petition fails to meet its requirements, the penalty is dismissal with prejudice. Iowa Code § 670.4A(3). After the hearing, the plaintiffs filed a supplemental brief arguing that § 670.4A did not apply in this case. The board responded with its own supplemental brief.

In ruling on the motion, the district court first concluded that both 1000 Friends and the individual landowners failed to plead sufficient facts in the petition to establish standing. As to the individual landowners, the district court found that the petition failed to include information about their property's proximity to the Geisler property at issue, whether they were entitled to receive notice of proposed rezoning, and the nature of their personal concerns (as opposed to the county staff's concerns) about the proposed changes. And as to 1000 Friends, the district court found that the petition failed to sufficiently allege that any of its members had a specific and personal interest in the proposed rezoning as required for organizational standing.

The district court then concluded that the plaintiffs' claims fell within the Iowa Municipal Tort Claims Act, which it said "provide[s] a procedural framework for all actions against municipalities, their officers, and employees, regardless of whether that action emanates from common law, statute, or otherwise." Because the plaintiffs failed to meet the Act's pleading requirements, and because the penalty for such a failure is dismissal with prejudice, the district court granted the board's motion to dismiss with prejudice—foreclosing any opportunity for the plaintiffs to amend the petition or refile it. This appeal followed, which we retained.

**II. Whether § 670.4A of the Act Applies.**

The plaintiffs argue that the district court erred in holding that the Iowa Municipal Tort Claims Act's heightened pleading requirements and remedy of dismissal without an opportunity to amend a petition applies to the claims in this case. The Act, with certain exceptions, makes a municipality "subject to liability for its torts and those of its officers and employees, acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function." Iowa Code § 670.2(1); *see also Thomas v. Gavin*, 838 N.W.2d 518, 521–22 (Iowa 2013). Recent amendments to the Act now require a heightened pleading standard. Iowa Code § 670.4A(3); *see* 2021 Iowa Acts ch. 183, § 14. The penalty for failing to do so is severe since an insufficient pleading "shall result in dismissal with prejudice." Iowa Code § 670.4A(3).

The plaintiffs argue that their lawsuit does not arise under the Municipal Tort Claims Act but instead under Iowa Code § 335.18. That statute expressly authorizes suits by people aggrieved by a board's zoning decision to challenge its legality:

> Any person or persons, jointly or severally, aggrieved by any decision of the board of adjustment under the provisions of this

chapter, or any taxpayer, or any officer, department, board, or bureau of the county, may present to a court of record a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality.

*Id.* § 335.18. Even if their claim arose under the Municipal Tort Claims Act, the plaintiffs argue that the specific requirements in § 670.4A are not triggered because they do not seek "monetary damages." The plaintiffs instead request only a writ of certiorari declaring that the board's approval of the rezoning application was illegal.

Iowa Code § 670.4A(1) provides employees and officers of municipalities with qualified immunity when certain criteria are met. But that immunity only extends to claims "brought under this chapter . . . *for monetary damages.*" *Id.* (emphasis added). Section 670.4A(3) imposes the pleading standard and its dismissal with prejudice penalty. If § 670.4A(3) applies only to the same extent as subsection (1)—in other words, only to monetary claims—then it would not apply in this case. The board argues that the requirements and penalties in subsection (3) are distinct from the statute's application of qualified immunity in subsection (1).

In our view, although subsection (3) does not expressly state that its pleading requirements apply only to claims seeking monetary damages, a full reading of § 670.4A in context suggests such a limitation. "Context is a primary determinant of meaning. A legal instrument typically contains many interrelated parts that make up the whole." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012; *see also Borst Bros. Constr. v. Fin. of Am. Com., LLC*, 975 N.W.2d 690, 700 (Iowa 2022) (quoting this passage with approval). In determining how a subsection of a statute operates, we consider the subsection's relationship to other parts of the same statute. In *Rochon Corp.*

*of Iowa v. Des Moines Area Cmty. Coll.*, 14 N.W.3d 111, 117 (Iowa 2024); *see also MIMG CLXXII Retreat on 6th, LLC v. Miller*, 16 N.W.3d. 489, 495 (Iowa 2025) (rejecting an argument that a particular subsection within a statute "perform[ed] a solo, rather than an ensemble role"). That's particularly true where, as here, the two subsections were added to the statute at the same time in the same enactment. *See State v. Hall*, 969 N.W.2d 299, 309 (Iowa 2022); *see also* 2021 Iowa Acts ch. 183, § 14.

In construing the type of claim that applies to the two subsections, we find no evidence of any textual attempt to create some difference in scope between the types of claims that the subsections cover. There is no textual clue in the statute that the claim at issue in subsection (1)—i.e., a claim for monetary damages—is different than the type of claim at issue in subsection (3) as they both refer to claims brought "under this chapter." *Compare* Iowa Code § 670.4A(1), *with id.* § 670.4A(3). We have said that "when the legislature wants subsections to operate independently, the legislature knows how to say so." *Rochon Corp. of Iowa*, 14 N.W.3d at 117. Here, § 670.4A implies a coordinated, rather than an independent, interpretation within its subsections about the type of claim it covers.

Our interpretation of both subsections (1) and (3) in *Nahas v. Polk County* supports our reading connecting the two provisions. 991 N.W.2d 770, 780 (Iowa 2023). In that case, we held that one of the procedural requirements in subsection (3)—to plead that "the law was clearly established at the time of the alleged violation"—did not apply. *Id.* (quoting Iowa Code § 670.4A(3) (2021)). To get there, we analyzed the requirements of subsection (3) together with the substantive immunity in subsection (1)(*a*), which addresses whether the right at issue "was not clearly established at the time of the alleged deprivation." *Id.*

(quoting Iowa Code § 760A.4A(1)(*a*) (2021)). We said that "whether the law was 'clearly established' " for purposes of subsection (3) "is inextricably intertwined with the new qualified immunity defense" in subsection (1). *Id.* (quoting Iowa Code § 760A.4A(3) (2021)).

Because the plaintiffs' petition alleges claims for illegal zoning without any claim for monetary damages, we conclude that neither the heightened pleading requirements nor the dismissal-with-prejudice penalty for insufficient pleadings found in § 670.4A(3) apply in this case.

### III. The Board's Challenge to the Plaintiffs' Standing.

Under our ordinary notice pleading standard, the plaintiffs' petition survives a motion to dismiss if it simply contains factual allegations that give the defendant "fair notice" of the claim so the defendant can adequately respond to the petition. *Schmidt v. Wilkinson*, 340 N.W.2d 282, 283 (Iowa 1983); *see* Iowa Rule of Civil Procedure 1.421(1)(*f*). A petition meets the fair notice requirement if it informs the defendant of the events that give rise to the claim and of the claim's general nature. *Soike v. Evan Matthews & Co.*, 302 N.W.2d 841, 842 (Iowa 1981).

We have taken a dim view of attempts to strike a claim through a motion to dismiss. "Generally, a motion to dismiss should not be granted." *Weizberg v. City of Des Moines*, 923 N.W.2d 200, 217 (Iowa 2018). "Nearly every case will survive a motion to dismiss under notice pleading." *U.S. Bank v. Barbour*, 770 N.W.2d 350, 353 (Iowa 2009). "A motion to dismiss is properly granted 'only when there exists no conceivable set of facts entitling the non-moving party to relief.' " *Rees v. City of Shenandoah*, 682 N.W.2d 77, 79 (Iowa 2004) (quoting *Barkema v. Williams Pipeline Co.*, 666 N.W.2d 612, 614 (Iowa 2003)). Without the heightened pleading standard applicable here, the petition certainly contains

sufficient facts to inform the board of the events giving rise to the claim and the claim's general nature.

Whether the petition presents sufficient facts to establish that the plaintiffs have standing to sue, however, is a closer question. "Standing" refers to a party's right to bring a legal action. *DuTrac Cmty. Credit Union v. Hefel*, 893 N.W.2d 282, 289 (Iowa 2017). Iowa Code § 335.18 establishes that "[a]ny person or persons, jointly or severally, aggrieved by any decision of the board of adjustment" may challenge that decision by filing a petition with the court of record. The board contends that the plaintiffs have failed to establish they have been "aggrieved" by the zoning decision to enable standing to sue. To establish standing, the plaintiffs must show that they have (1) a specific personal or legal interest in the litigation and (2) have been or will imminently be injured by the challenged activity. *Citizens for Responsible Choices v. City of Shenandoah*, 686 N.W.2d 470, 475 (Iowa 2004).

**A. Whether the Individual Plaintiffs Sufficiently Pleaded Standing.** The individual plaintiffs argue, among other things, that because they each live near the rezoned property, they each have a specific personal or legal interest in the rezoning decision to confer standing. It appears that our court has never previously addressed whether a resident living near, but not adjacent to, a rezoned property has standing to challenge a zoning decision. Several other states analyzing this question, however, have held that people with property sufficiently near a rezoned property have standing to challenge a zoning decision. *See, e.g.*, *State v. Weidner*, 684 P.2d 103, 110 (Alaska 1984); *Renard v. Dade County*, 261 So. 2d 832, 834–35 (Fla. 1972); *Weeks Rest. Corp. v. City of Dover*, 404 A.2d 294, 296 (N.H. 1979); *In re Douglaston Civic Ass'n v. Galvin*, 324 N.E.2d

317, 321 (N.Y. 1974); *E. Grossman & Sons, Inc. v. Rocha*, 373 A.2d 496, 498 (R.I. 1977).

In *Reynolds v. Dittmer*, 312 N.W.2d 75, 78 (Iowa Ct. App. 1981), our court of appeals considered the question and concluded that any "person whose specific interest or property rights are specially damaged, in contrast to any effect suffered by the public generally, is entitled to challenge a zoning authority's decision." This includes nearby property owners. *Id.*

In determining whether someone has a specific interest or property right, the court of appeals adopted a four-factor test described in a Florida Supreme Court case. 312 N.W.2d at 78 (citing *Renard v. Dade County*, 261 So. 2d 832, 837 (Fla. 1972)). The four factors include (1) the "proximity of the person's property to the property to be zoned or rezoned," (2) the "character of the neighborhood, including existence of common restrictive covenants and set-back requirements," (3) the "type of change proposed," and (4) "whether the person is one entitled to receive notice under the zoning ordinance." *Id.*

In *Reynolds*, the plaintiffs challenged a county board of supervisors' approval of a new subdivision in their neighborhood. *Id.* at 76–77. The petition alleged that "[a]ll [plaintiffs] live adjacent or near the proposed subdivisions, the affected area is primarily farm land, and the proposed subdivision will be residential in character." *Id.* at 78. The court of appeals also noted that "several of the plaintiffs would be entitled to notice of a zoning variance or rezoning which, by analogy, strengthens their position in the instant case." *Id.* The court of appeals held that the nearby residents had standing to sue. *Id.*

In analyzing the first factor—the proximity of the person's property to the property to be zoned or rezoned—although the petition does not directly state how far each plaintiff resides from the rezoned property, the petition does set

forth the individual plaintiffs' addresses. Iowa Rule of Evidence 5.201(*b*)(2) permits courts to take judicial notice of facts "from sources whose accuracy cannot reasonably be questioned." Maps are one such source. *See Wander v. Brady*, 105 N.W.2d 86, 89 (Iowa 1960) (stating that "geographical facts" are "proper subjects for judicial notice"); *see also United States v. Perea-Rey*, 680 F.3d 1179, 1182 n.1 (9th Cir. 2012) (taking judicial notice of distances from Google Maps); *Citizens for Peace in Space v. City of Colorado Springs*, 477 F.3d 1212, 1218 n.2 (10th Cir. 2007) (same). In mapping the addresses listed in the petition relative to the subject property, and considering the rural nature of the particular area, we conclude that the five individual plaintiffs reside sufficiently close to the subject property (the farthest of the three about four miles away; one about a mile-and-a-half away) that this factor weighs in their favor.

Turning to the second and third factors, "the character of the neighborhood" and "the type of change proposed," the petition alleges that the subject parcel and the surrounding area have historically been zoned "agricultural" and that the rezoning is a marked change. On this latter point, the board highlights that there had long been a conditional commercial permit to operate the pumpkin patch on the property. But the petition sufficiently alleges that the prior use for the seasonal activities associated with the pumpkin patch were limited and meaningfully different than the uses contemplated by the Foundation and would require potentially significant infrastructure upgrades and other changes. These factors similarly cut in the individual plaintiffs' favor.

Concerning the final factor, "whether the person is one entitled to receive notice under the zoning ordinance," the board points out that the individual plaintiffs never directly allege in the petition that they received notice or were entitled to notice. On the other hand, the individual plaintiffs do allege in the

petition that "property owners beyond the traditional radius employed, for example, in urban areas," received notice about the potential rezoning. Based on the individual plaintiffs' proximity to the subject property as gleaned from their addresses in the petition, if notice was provided to people residing even in urban areas, one might reasonably infer that the individual plaintiff landowners would have received notice. But since those who received or were entitled to receive notice isn't completely clear from the petition, we hesitate to give this factor much weight.

All in all, the factors set forth in *Reynolds* point toward the conclusion that the individual plaintiffs have sufficiently alleged standing in this case. We thus reverse the district court's ruling dismissing the individual plaintiffs on this basis.

**B. Whether 1000 Friends Sufficiently Pleaded Standing.** We turn to the board's challenge to 1000 Friends' standing. 1000 Friends argues it adequately pleaded organizational standing based principally on the petition's recitation of 1000 Friends's mission of preventing "poorly planned land use decisions" and encouraging "land use planning that protects farmland and natural areas." The board argues these allegations are insufficient to establish standing under our caselaw.

Again, the statute permits "[a]ny person or persons, jointly or severally, aggrieved by any decision" under chapter 335 to file a petition challenging the legality of the zoning action. Iowa Code § 335.18. An organization can assert the interests of its members to establish organizational standing (sometimes also referred to as "associational standing"). *Citizens for Wash. Square v. City of Davenport*, 277 N.W.2d 882, 886 (Iowa 1979); *see Associational Standing, Black's Law Dictionary* 1695 (11th ed. 2014). Organizational standing usually involves

an organization establishing that one of its members could have brought the same suit on their own. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342 (1997). To meet this requirement, a party generally must show (1) a "specific personal [or] legal interest in the subject matter" of the decision and (2) "a specific and injurious effect on this interest by the decision." *Iowa-Ill. Gas & Elec. Co. v. Iowa State Com. Comm'n*, 347 N.W.2d 423, 426 (Iowa 1984).

In cases where an organization has sought to establish standing based on claims alleging environmental harm, we have generally analyzed the effect of the challenged action on the organization's members. *See Puntenney v. Iowa Utilities Bd.*, 928 N.W.2d 829, 837 (Iowa 2019). To establish a "specific personal or legal interest" in an environmental harm case, we have required an organizational plaintiff to show that it or its members "use the affected area," and to establish injury, we have required an organization to show that " 'the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Bushby v. Wash. Cnty. Conservation Bd.*, 654 N.W.2d 494, 497 (Iowa 2002) (quoting *Friends of the Earth, Inc., v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000)). *See Iowa-Ill. Gas & Elec. Co.*, 347 N.W.2d at 426.

*Puntenney v. Iowa Utilities Board*, 928 N.W.2d 820, is instructive. In that case, the Sierra Club sought judicial review of the Iowa Utilities Board's approval of a pipeline company's petition to use eminent domain to build a crude oil pipeline across the state. *Id.* at 832–33. The pipeline company argued that the Sierra Club lacked standing. *Id.* at 837. The Sierra Club argued in response that because several of its members had standing, it had organizational standing to represent their interests. *Id.*

In concluding that the Sierra Club had standing, we spotlighted the affidavits of two Sierra Club members "describing their use and enjoyment of the

rivers, streams, soil, and other natural areas and aesthetics" and "their concerns that the construction and operation of the pipeline would have adverse environmental impacts on those areas that they use and enjoy." *Id.* We noted that neither of the statutes granting the rights of objection and of judicial review prevented organizational standing. Iowa Code § 479B.7(1) permitted objections from "any person 'whose rights or interests may be affected by the proposed pipeline or hazardous liquid storage facilities.' " *Id.* (quoting Iowa Code § 479B.7(1) (2016)). Iowa Code § 17A.19 authorized a petition for judicial review by any "person or party who is aggrieved or adversely affected by agency action." *Id.* at 837–38 (quoting Iowa Code § 17A.19 (2016)). "Nothing in the Iowa Code," we concluded, "limits standing in pipeline proceedings to individuals whose property is in the direct path of the pipeline." *Id.* at 837.

The statute at issue in this case, Iowa Code § 335.18, requires that a party prove it has been "aggrieved" by the zoning decision. We have long held that an organization may have organizational standing as an aggrieved party under Iowa statutes when its members have been aggrieved. *See, e.g.*, *Puntenney*, 928 N.W.2d at 837–38 (finding organizational standing for an environmental advocacy group whose members were "aggrieved or adversely affected" by a state board's decision); *Iowa-Ill. Gas & Elec. Co.*, 347 N.W.2d at 426–27 (finding organizational standing by an association of residential utilities customers whose members were "aggrieved or adversely affected" by a commission's decision ); *Polk County v. Iowa State Appeal Bd.*, 330 N.W.2d 267, 273 (Iowa 1983) (finding that a plaintiff representing his organization was "aggrieved or adversely affected" by a state board's decision). At least two other states with similarly worded statutes have also found organizational standing in zoning-challenge cases. *See, e.g.*, *Saugatuck Dunes Coastal All. v. Saugatuck Township*,

983 N.W.2d 798, 802 (Mich. 2022) (en banc) (holding that an organization may have organizational standing as an "aggrieved" party under Michigan's zoning statute based on its members' interests); *Save A Valuable Env't (SAVE) v. City of Bothell*, 576 P.2d 401, 403–05 (Wash. 1978) (en banc) (holding that an organization had standing under Washington law as a "beneficially interested" party based on alleged harm to its members).

In this case, 1000 Friends has alleged that it has a "specific, personal and legal interest in the Subject Property, like the parcels that surround it throughout this part of the County, remaining agricultural land." But it has not alleged facts establishing that any of its members have standing. The organization's interest, as pleaded, appears to be no greater than any member of the general public, and thus it has not been "aggrieved" by the zoning decision as required under § 335.18.

1000 Friends also suggests that it has private party standing—in other words, standing in its own right, without reference to one of its members. The test for private party standing remains the same, but instead of asserting a member's injury, it is the organization's own injury. *See Hawkeye Foodservice Distrib., Inc. v. Iowa Educators Corp.*, 812 N.W.2d 600, 606 (Iowa 2012). 1000 Friends points to its mission—to prevent "poorly-planned land use decisions" and encourage "land use planning that protects farmland and natural areas"—as creating its own interest in the subject property. But ensuring that the government complies with the law is a general interest, not a "specific personal or legal interest" conferring private party standing. *See Alons v. Iowa Dist. Ct.*, 698 N.W.2d 858, 868–69 (Iowa 2005).

As the petition stands, 1000 Friends has not established standing. But this does not resolve the issue. We are evaluating this standing challenge at the

motion to dismiss stage based only on the allegations in the petition, not after the parties have had an opportunity to submit evidence as in *Puntenney*. At the hearing on the motion to dismiss, the plaintiffs made an oral motion to amend their petition.

"Leave to amend," under our civil rules, "shall be freely given when justice so requires." Iowa R. Civ. P. 1.402(4). We will reverse a ruling on motion for leave to amend a pleading if the record indicates the district court clearly abused its discretion. *Rife v. D.T. Corner, Inc.*, 641 N.W.2d 761, 766 (Iowa 2002). "We will find an abuse of discretion when the court bases its decision on clearly untenable grounds or to an extent clearly unreasonable." *Id.* An "untenable ground" includes "reliance upon an improper legal standard or error in the application of the law." *Bottoms v. Stapleton*, 706 N.W.2d 411, 415 (Iowa 2005). The district court denied the motion based on an erroneous application of the heightened pleading standards in § 670.4A, which accord plaintiffs no opportunity to amend a deficient pleading. *See* Iowa Code § 670.4A(3).

In this situation, 1000 Friends should have been granted the opportunity to amend its petition. Even the board conceded that the plaintiffs could likely establish standing if they were permitted to "fill[] in the holes" in the petition. We thus reverse the district court's denial of the plaintiffs' motion to amend the petition based on its erroneous application of § 670.4A(3).

**IV. Conclusion.**

We thus reverse the district court's order dismissing the plaintiffs' petition and remand the case for further proceedings consistent with this opinion.

**Reversed and Remanded.**

Christensen, C.J., and Waterman and Mansfield, JJ., join this opinion. McDonald, J., files an opinion concurring in part and dissenting in part, in which Oxley and May, JJ., join.

**McDonald, Justice (concurring in part and dissenting in part).**

"In our caselaw, standing is a term of art." *Hunter Three Farms, LLC v. Hunter*, ___ N.W.3d ___, ___, 2025 WL 645102, at *3 (Iowa Feb. 28, 2025). It "refers to a party's right to bring a legal action." *Planned Parenthood of the Heartland, Inc. v. Reynolds ex rel. State*, 9 N.W.3d 37, 53 (Iowa 2024). In Iowa, standing is "a self-imposed rule of judicial restraint" to police the boundaries between the judicial department and the legislative and executive departments. *Kline v. SouthGate Prop. Mgmt., LLC*, 895 N.W.2d 429, 437 (Iowa 2017). The standing doctrine ensures that the judicial department limits itself to deciding actual cases, not political disputes, and entering judgments or decrees consistent with the judicial power.

To have standing to sue, "a complaining party must (1) have a specific personal or legal interest in the litigation and (2) be injuriously affected." *Iowa Citizens for Cmty. Improvement v. State*, 962 N.W.2d 780, 790 (Iowa 2021) (quoting *Citizens for Responsible Choices v. City of Shenandoah*, 686 N.W.2d 470, 475 (Iowa 2004)). "Whether litigants have standing does not depend on the legal merit of their claims, but rather whether, if the wrong alleged produces a legally cognizable injury, they are among those who have sustained it." *Citizens for Responsible Choices*, 686 N.W.2d at 475. In addition to these general standards, our standing doctrine recognizes special rules of standing for certain litigants. For example, an organization may, in certain circumstances, sue on behalf of its members. *See Citizens for Wash. Square v. City of Davenport*, 277 N.W.2d 882, 886 (Iowa 1979). As another example, we have said that, in certain circumstances, a party may assert the rights of a third party not before the court. *See Planned Parenthood*, 9 N.W.3d at 53.

But this case does not present a question of standing within the meaning of our standing doctrine. The legislature has answered any standing question by creating a cause of action for certain persons to challenge a zoning decision:

> Any person or persons, jointly or severally, aggrieved by any decision of the board of adjustment under the provisions of this chapter, or any taxpayer, or any officer, department, board, or bureau of the county, may present to a court of record a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality. Such petition shall be presented to the court within thirty days after the filing of the decision in the office of the board.

Iowa Code § 335.18 (2023). When a party files a suit pursuant to a statute, the only question presented is whether the party "has a cause of action under the statute." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014). This "requires us to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Id.* at 127. Stated differently, we inquire whether the plaintiff "falls within the class of plaintiffs whom [the legislature] has authorized to sue." *Id.* at 128.

Whether the plaintiff in a particular case is among the class of plaintiffs authorized to sue is sometimes referred to as "statutory standing." *Id.* at 128 n.4. Although the term "statutory standing" is frequently used, it is misleading and something of a misnomer because the question in a statutory standing case is really a pure question of statutory interpretation. *Id.* at 127–28. Whether a party has statutory standing has nothing to do with our traditional standing jurisprudence. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 (1998) (explaining that statutory standing "has nothing to do" with standing jurisprudence); *Do No Harm v. Pfizer Inc.*, 126 F.4th 109, 117 n.5 (2d Cir. 2025) (per curiam) (explaining that statutory standing does not implicate the standing

doctrine); *Oman Fasteners, LLC v. United States*, 125 F.4th 1068, 1080 (Fed. Cir. 2025) (explaining that the statutory standing inquiry is "whether the plaintiff has a statutory right of action"); *Intell. Tech LLC v. Zebra Techs. Corp.*, 101 F.4th 807, 814 (Fed. Cir.) (explaining that "statutory standing . . . and the injury-in-fact inquiry . . . are distinct"), cert. denied, 145 S. Ct. 568 (2024); *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) ("The Supreme Court has recently clarified, however, that what has been called 'statutory standing' in fact is not a standing issue, but simply a question of whether the particular plaintiff 'has a cause of action under the statute.' " (quoting *Lexmark Int'l*, 572 U.S. at 128)); *CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 52 (4th Cir. 2011) (explaining the distinction between standing, as traditionally understood, and "statutory standing, which is perhaps best understood as not even standing at all").

At least some of the plaintiffs in this case are among the class of persons the legislature authorized to challenge this zoning decision. The statute authorizes "[a]ny person or persons . . . aggrieved by any decision of the board of adjustment under the provisions of this chapter" to "present to a court of record a petition . . . setting forth that such decision is illegal." Iowa Code § 335.18. I agree with the court that the four-factor test set forth in *Reynolds v. Dittmer*, 312 N.W.2d 75, 78 (Iowa Ct. App. 1981), is a useful tool to determine whether a person was "aggrieved by" a zoning decision. Applying that test, I agree with the court that plaintiffs Bill Barnes, Inc.; Bradley E. Coulson; Teresa M. Coulson; the Sondra K. Feldstein Revocable Trust; and the Stuart I. Feldstein Revocable Trust were "aggrieved by" the decision and, pursuant to the statute, are among the class of persons who may "present to a court of record a petition . . . setting forth that such decision [was] illegal." Iowa Code § 335.18.

I reach a different conclusion with respect to 1000 Friends of Iowa. Because this case presents only a question of statutory standing, the only question presented is whether 1000 Friends of Iowa is within the class of persons the legislature authorized to challenge the zoning decision at issue, i.e., whether 1000 Friends of Iowa was "aggrieved by" the zoning decision. Applying the *Reynolds* factors, I conclude 1000 Friends of Iowa was not aggrieved by the zoning decision and thus has no right to pursue the statutory cause of action authorized by section 335.18.

The court concludes otherwise. Applying our traditional standing jurisprudence, the majority concludes that 1000 Friends of Iowa might have associational standing. But our associational standing jurisprudence is not relevant here. Associational standing addresses the first question of whether a litigant has asserted an injury that can be redressed by a court, but it does not address the secondary question presented of whether a party, even if injured in some sense, falls within the class of persons authorized by statute to pursue a cause of action. The Eighth Circuit explained this distinction:

> When a plaintiff alleges injury to rights conferred by statute, two separate standing-related inquiries are implicated: whether the plaintiff has Article III standing (constitutional standing) and whether the statute gives that plaintiff authority to sue (statutory standing).
>
> . . . "Statutory standing is simply statutory interpretation: the question it asks is whether Congress . . . has accorded *this* injured plaintiff the right to sue the defendant to redress his injury."

*Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 934 (8th Cir. 2012) (citations omitted) (quoting *Graden v. Conexant Sys., Inc.*, 496 F.3d 291, 295 (3d Cir. 2007)).

Generally, derivative forms of standing are insufficient to satisfy statutory standing requirements. In *Moya v. United States Department of Homeland*

*Security*, 975 F.3d 120 (2d Cir. 2020), a nonprofit called Youth Ministries for Peace and Justice Inc. (YMPJ) brought a claim under the Immigration and National Act (INA) challenging an immigration law. *Id.* at 124. The court concluded that YMPJ had Article III standing because the law frustrated the organization's mission and caused it to spend substantial resources in response to the law. *Id.* at 130. However, the court concluded that YMPJ lacked statutory standing because it did "not fall within the class of persons specified in the INA's naturalization provisions as having the right to sue—namely, naturalization applicants." *Id.* at 131. A mere derivative interest in another's rights was not enough to establish statutory standing. *Id.* " '[W]hether a plaintiff has a cause of action under the law invoked' . . . requires more than an altruistic concern for somebody else's rights." *Id.* at 132 (quoting *Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 129 (2d Cir. 2020)).

Application of the traditional standing doctrine to find statutory standing amounts to statutory revision rather than statutory interpretation because it expands the scope of persons the legislature authorized to bring suit in disregard of the statutory text. *See, e.g., Madgy v. I.C. Sys., Inc.*, 47 F.4th 884, 890 (8th Cir. 2022) (finding that plaintiff asserting third-party standing lacked statutory standing); *Animal Legal Def. Fund, Inc. v. Espy*, 23 F.3d 496, 503 (D.C. Cir. 1994) (stating that it is "not enough that the organizations exist to promote interests congruent with the humanitarian purposes of the statute" because courts "owe fidelity as well to the means by which the statute pursues its purposes"); *Haitian Refugee Ctr. v. Gracey*, 809 F.2d 794, 813 (D.C. Cir. 1987) ("If any person or organization interested in promoting knowledge, enjoyment, and protection of the rights created by a statute . . . has an interest that falls within the zone

protected or regulated by the statute . . . , then the zone-of-interest test is not a test because it excludes nothing.").

With respect to 1000 Friends of Iowa, the court errs in applying traditional standing rules to find the organization might have statutory standing. 1000 Friends of Iowa has a laudable interest in responsible and equitable land use in Iowa. So do numerous other organizations and individuals. 1000 Friends of Iowa's interest in responsible and equitable land use does not make it "aggrieved by" this zoning decision within the meaning of the statute. Nor does the fact that one of its members may have been aggrieved by the challenged zoning decision make 1000 Friends of Iowa aggrieved by the challenged zoning decision. Our decision in *Puntenney v. Iowa Utilities Board*, 928 N.W.2d 829 (Iowa 2019), did not approve of associational standing in this context. In that case, the parties did "not dispute that [the organization could] assert the interests of its members for standing purposes." *Id.* at 837. Given that no party contested the issue, we proceeded to analyze the question of whether any member of the organization was in fact injured. *See id.*

For these reasons, I concur in part and dissent in part. I agree with the court's conclusion that the Iowa Municipal Tort Claims Act and its qualified immunity provisions do not apply here. I agree with the court's conclusion that plaintiffs Bill Barnes, Inc.; Bradley E. Coulson; Teresa M. Coulson; the Sondra K. Feldstein Revocable Trust; and the Stuart I. Feldstein Revocable Trust have been aggrieved by the challenged zoning decision and have the statutory right to challenge that decision. I respectfully dissent from the conclusion that 1000 Friends of Iowa was aggrieved by, or might have been aggrieved by, the challenged zoning decision, and I would affirm the district court's dismissal of 1000 Friends of Iowa.

Oxley and May, JJ., join this concurrence in part and dissent in part.